The Honorable Robert J. Bryan

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARGARET DIBB, on behalf of herself and on behalf of others similarly situated,

Plaintiff,

vs.

ALLIANCEONE MANAGEMENT RECEIVABLES,

Defendants.

NO. 3:14-CV-05835-RJB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: March 13, 2015**

ORAL ARGUMENT REQUESTED

## I. INTRODUCTION

Defendant has filed a motion for summary judgment, arguing plaintiff Margaret Dibb's claims are barred by the one-year statute of limitations governing claims made under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (FDCPA). Plaintiffs oppose this motion on multiple grounds. First, a decision on this motion should be deferred until after the Court decides whether plaintiff will be permitted to file a First Amended Complaint. On its merits, defendant's motion fails because there is no admissible evidence that the Notice of Dishonor of Check was mailed to plaintiff more than a year prior to the filing of this lawsuit. Additionally, even if the Notice of Dishonor were mailed more than one year prior to the filing of the lawsuit, Plaintiff did not discover the Notice until it was served on her in 2014 in a state court collection action. Finally, by serving



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



plaintiff in 2014 with the Notice of Dishonor, defendant committed a new FDCPA violation from which a new statute of limitations runs. Also, to the extent that there are factual questions surrounding the newly-revealed fact that the Notice of Dishonor was allegedly mailed in 2012 by a non-party, Plaintiffs are entitled to time to conduct discovery concerning the alleged mailing. For all these reasons, Defendant's motion should be denied.

## II. BACKGROUND

In 2012, Plaintiff Dibb moved to Vashon Island, Washington. Declaration of Margaret Dibb, ¶ 4.[1] Upon moving to Washington Dibb purchased license plates and tabs for her vehicle from the Washington State Department of Licensing ("DOL") using a personal check in the amount of $90.25. *See* Dibb Decl., ¶ 5.

In July 2013, Dibb went to the DOL to renew her tabs, and found out that she could not renew her tabs because her check from the previous year had been dishonored. *Id.*, ¶ 6. Dibb was told by the DOL clerk that the debt had been sent to collection agency called AllianceOne and she would need to contact them to pay the amount of the dishonored check plus interest before she would be allowed to renew her tabs. *Id.*, ¶ 7.

Dibb then called AllianceOne. *Id.,*¶¶ 6-7. The debt collector with whom she spoke initially told her that if she paid $98.77, which included the amount of the dishonored check and interest to date, she would be able to renew her tabs. *Id.,*¶ 8. However, the collector then changed his story and told Dibb that, unfortunately, her matter had been sent to AllianceOne's attorneys and there would be hundreds more in fees. *Id,* Dibb requested to speak with the attorneys about the lawsuit, but the collector refused to connect her. Dibb then requested to speak with a Supervisor. *Id.,*¶¶ 9-10. The Supervisor affirmed what the collector had told Dibb about the account being sent to legal. *Id.,*¶¶ 10-

1. Declaration of Margaret Dibb will be cited as Dibb Decl. hereinafter.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



12. Dibb told the supervisor that she disputed that she owed any amount over $98.77. *Id.*,¶ 11. She finally agreed to pay only the $98.77. *Id.*,¶ 14.

The DOL renewed Dibb's tabs when she presented the receipt for $98.77. *Id.*, ¶ 14. Ms. Dibb called AllianceOne that day to attempt to resolve the matter and to attempt to get in contact with AllianceOne's attorneys. *Id.*,¶ 13. She was told that a lawsuit have been filed against her, but AllianceOne refused to connect her with its attorneys or provide her with a phone number for the legal department. *Id.*,¶¶ 10-15.

On October 24, 2013, AllianceOne served Dibb with a Summons and Complaint. *Id.*, ¶ 15. Defendant does not claim that it attempted to contact Plaintiff at any time between the July 10, 2103 phone calls and the service of the state court collection lawsuit.

Dibb was shocked when she was served, because in the July 10, 2013 phone calls, had asked that AllianceOne's lawyers contact her and had not heard from them. *Id.*, ¶ 11. In addition, because AllianceOne had not tried to contact her since her payment of $98.77, she believed that AllianceOne had terminated its collection efforts. *Id.*¶ 15.

Dibb timely responded to the state law complaint on November 8, 2013. In her response Dibb denied that she owed the debt and stated that she had paid in full the amount due.

On September 15, 2014, AllianceOne filed a Motion for Summary Judgment in King County District Court, Cause# 133-15386, alleging it was entitled to a judgment of $710.93 against Dibb. Attached to that Motion was the Declaration of Plaintiff (AllianceOne) which included the Notice of Dishonor of Check ("NOD"), dated September 25, 2012.[2] This was the first time that Dibb had seen the NOD. Even if the NOD was really mailed in 2012, Ms. Dibb has periodic problems receiving mail because she lives in a rural area and shares a mailbox. *Id.*, at ¶¶ 16-17; Declaration of Christopher Cain, filed herewith.

---

2. A copy of the Notice of Dishonor of Check was served with the state court Motion for Summary Judgment is attached to the Declaration of Kathleen Box as Exhibit 1.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

The NOD contains the following paragraph:

The NOD that Defendant claims it sent Dibb contained the following language: You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check within thirty days after the date this letter is postmarked.[3]

## III. LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *U.S. v. Carter*, 906 F.2d 1375, 1376 (9th Cir.1990). When a properly supported motion for summary judgment is made, the burden then shifts, and the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. When viewing the evidence at this stage, all justifiable inferences are drawn in favor of the nonmoving party. *Id.*, at 255, 106 S.Ct. 2505.

### B. In the Interest of Judicial Economy, this Motion Should Be Denied or Deferred, Since Plaintiff Is in the Process of Filing an Amended Complaint

In February 2015, Plaintiff's counsel was contacted by Shauna Ovist who received a Notice of Dishonor of Check, mailed by AllianceOne in August or September 2014, containing a false threat of prosecution. Ms. Ovist is seeking to join this lawsuit as a representative plaintiff. Plaintiff has asked Defendant to stipulate to the filing of a First Amended Complaint, which adds a new plaintiff and a

3. Box Decl., Ex. 1.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



new claim.[4] If Defendant will not stipulate to its filing in the next few days, Plaintiff will file a Motion for Leave to File an Amended Complaint Pursuant to Fed.R.Civ.P 15(a)(2). It makes sense to first decide which complaint will be the operative pleading before deciding a motion for summary judgment in this action. Therefore, Plaintiff requests, in the interest of judicial economy, that Defendant's motion be denied without prejudice, or deferred, until the after the issue of the filing of the First Amended Complaint is resolved.

**C. <u>Summary Judgment Should Be Denied because there Is No Admissible Evidence that the Notice of Dishonor Was Mailed to Ms. Dibb in 2012</u>**

This lawsuit is based on a Notice of Dishonor of Check (NOD) that Plaintiff first saw in September 2014. Dibb Decl., ¶ 16. AllianceOne claims that a NOD was mailed to Dibb on September 25, 2012. Ms. Dibb denies ever receiving that mail, or seeing the NOD until it was served as an exhibit in support of AllianceOne's state court Motion for Summary Judgment. Dibb Decl. ¶ 16. To prevail, AllianceOne must prove, by admissible evidence, that there is no genuine issue of material fact that Ms. Dibb knew, or should have known, of the NOD more than one year prior to filing this lawsuit. AllianceOne has not submitted admissible evidence establishing this as an undisputed fact, and therefore its motion must be denied.

The evidence that the NOD was mailed to Ms. Dibb in 2012 is hearsay, since there is no testimony from a person with personal knowledge that the NOD was mailed in 2012. Defendant seems to seek admission of this evidence under the "business records" exception to the prohibition against hearsay evidence. The federal business records exception is embodied in Fed.R.Ev. 803(6), which provides:

---

4. *See* Declaration of Kathleen Box.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994
NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

(6) Records of a regularly conducted activity. A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Ev. 803(6)

The foundational requirement in Fed.R.Ev. 803(6) dictates that offered records be authenticated by testimony from a custodian or other qualified witness from the business. *Hudson v. Martingale Invs., LLC (In re Hudson)*, 504 B.R. 569, 575, (B.A.P. 9th Cir. 2014). A document kept in the regular course of business, but not made by the business, can still qualify as a business record of the enterprise, if there is testimony that the document was kept in the regular course of business and the business regularly relied on the document. *United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993). In *Childs*, the Ninth Circuit held that documents prepared by third parties and incorporated into the records of an auto dealership were properly admitted based on witness testimony that the documents *were kept in the regular course of the dealership's business and were relied upon by the dealership*. *Id*, *Emphasis added*. Each of these elements is critical to admissibility. In *Hudson*, the Sales Report, needed to establish the time of the sale, was excluded from evidence because it had been created by a third party, and there was no testimony from the dealership seeking its admission that the Sales Report was <u>kept</u> in the regular course of the



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



dealership's business and relied upon by the dealership. *Hudson*, 504 B.R. 569 at 576, emphasis in the original.

Defendant relies on the declaration of AllianceOne employee Kara Collett to lay a foundation for the admissibility of the NOD as containing evidence that it was mailed to Ms. Dibb on September 25, 2012. According to Defendant, the NOD was generated by an unidentified off-site vendor that is responsible for printing and mailing the Notices. This is undoubtedly a high-volume operation, as AllianceOne describes itself as "As a leading provider of receivables management [e.g. collections] and contact center solutions. . ."[5] Nowhere does Ms. Collett testify that the NOD is maintained in the regular course of Defendant's business, or that Defendant relies upon its accuracy in its business. In fact, Ms. Collett does not even explain how or when it received a copy of the NOD from the unnamed vendor. Following *Hudson*, the absence of this testimony means that the NOD is inadmissible to prove when it was mailed. The flaws in Defendant's attempt to use the NOD as evidence do not end there. There is no testimony about the time of creation of the NOD, required by Fed.R.Ev. 806(3)(A), or that making this record is a regular practice of the third party vendor, as required by Fed.R.Ev. 803(3)(C). There is also no testimony about how or when Defendant received a copy of the NOD, or how or where it was maintained until filed with the Court.

Finally, there is reason to doubt the trustworthiness of the evidence regarding the date of mailing of the NOD. The declaration of mailing contains what has the look of a machine-printed signature, which would be consistent with the process of having an outside vendor printing and mailing a high volume of notices. It is also impossible to decipher the name of the purported declarant, and defendant has not even disclosed the name of the vendor that allegedly printed and mailed the NOD.

5. See http://www.allianceoneinc.com/services-solutions.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



If the signature is machine-printed the declaration is inadmissible as evidence of the date of mailing. Pursuant to 28 U.S.C. § 1746, an unsworn declaration under penalty of perjury may be submitted in lieu of a sworn affidavit, but the declaration must actually be signed by the declarant. *Feezor v. Excel Stockton*, LLC, 2013 U.S. Dist. LEXIS 142715, 8, 2013 WL 5486831 (E.D. Cal. Sept. 28, 2013) (the probative force of a declaration subscribed under penalty of perjury derives from the signature of declarant.); *Ellington v. Alameida*, 2010 U.S. Dist. LEXIS 66472, 22, 2010 WL 2650632 (E.D. Cal. July 1, 2010) (declarations containing only typed signatures have no evidentiary value); *Tomasian v. C.D. Peacock, Inc*., 2012 U.S. Dist. LEXIS 91795, 6, 2012 WL 2590493 (N.D. Ill. July 3, 2012) (declaration requires an original signature; an electronic signature does not comply with 28 U.S.C. § 1746); *See also, Dremak v. Iovate Health Scis. Group, Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 2014 U.S. Dist. LEXIS 27670, 69 (S.D. Cal. Mar. 3, 2014); *Shepard v. Shinseki*, 2014 U.S. Dist. LEXIS 90441, 11, 2014 WL 2960384 (D. Nev. June 30, 2014). Here, there is a legitimate question concerning the signature on the NOD. In the absence of undisputed evidence of a 2012 mailing, the statute of limitations did not begin to run until 2014, when Ms. Dibb first saw the NOD as an exhibit to the state court Motion for Summary Judgment filed by AllianceOne. She filed her Complaint well within the statute of limitations.

**D. <u>To the Extent that the Court Has Questions Regarding the Bona Fides of the Notice of Dishonor, this Motion Should Be Denied or Continued to Permit Plaintiff an Opportunity to Conduct Discovery</u>**

Pursuant to Fed.R.Civ.P. 56(d), the Court may defer ruling on, or deny, a motion for summary judgment to allow further discovery, where the party opposing summary judgment identifies specific facts that further discovery would reveal, and explains why those facts would preclude summary judgment. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Here, the substance of the NOD is the subject of this lawsuit. The sole basis for the present summary judgment motion is Defendant's claim that the NOD was mailed to Plaintiff in 2012. Plaintiff denies ever



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994
NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

having received the NOD until 2014. The only evidence of mailing is the declaration of mailing contained in the NOD, which, as pointed out above is improperly authenticated and contains inadmissible hearsay regarding the date of its mailing.

Until this motion was filed last month, neither Plaintiff nor her counsel knew that the NOD was prepared and mailed by an unidentified third party vendor. Now that Defendant has disclosed this, Plaintiff can subpoena records or testimony from the vendor to ascertain whether the declaration of mailing was actually signed by the person who mailed the NOD, and further establish that there is a genuine issue of disputed fact as to when, if ever, the NOD was mailed.[6] Therefore, unless the Court sustains Plaintiff's objection to admissibility of the NOD to establish the date of its mailing, Plaintiff requests that the summary judgment motion be denied or continued for a period sufficient for her to conduct discovery concerning the alleged 2012 mailing of the NOD.[7]

## E. Defendant's Motion Should Be Denied because the Statute of Limitations on the Notice of Dishonor, Allegedly Mailed in 2012, Did Not Begin to Run until September 2014, when Ms. Dibb First Saw the Notice

### 1. The Discovery Rule Applies to the Violations Alleged in this Lawsuit

Assuming, *arguendo*, that the original NOD was mailed in 2012, under the discovery rule, the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the injury that is the basis of the action. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009). Thus, under this "discovery rule" a consumer whose rights under the FDCPA are violated by a debt collector has one year from the date that he or she discovers or should have discovered the violative conduct to file a lawsuit. 15 U.S.C. § 1692k(d).[8]

6. Plaintiff assumes that Defendant will voluntarily provide the vendor's name and contact information.
7. This request is supported by the Declaration of Kathleen Box, filed herewith.
8. If there is a factual dispute about whether the plaintiff knew or had reason to know of the specific injury, summary judgment must be denied. *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998).



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994

NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

In *Mangum*, the crux of the FDCPA violation was that the debt collector had unlawfully disclosed the plaintiff's private financial information to a third party. The district court dismissed the FDCPA claim on the ground that the lawsuit was filed more than one year from the date of disclosure. The Ninth Circuit reversed the district court, holding that the statute of limitations did not begin to run until the plaintiff first learned of the unauthorized disclosure, which was less than one year prior to the date the complaint was filed. *Mangum*, 575 F.3d at 941.

In *Tourgeman v. Collins Fin. Servs*., 2011 U.S. Dist. LEXIS 81070, 19-20, 2011 WL 3176453 (S.D. Cal. July 26, 2011) the district court applied the discovery rule in an FDCPA case where the facts are markedly similar to those before this Court. In *Tourgeman*, the plaintiff sued the defendant debt collectors, in part, for mailing him collection letters that misidentified the original creditor, in violation of the FDCPA. The misleading collection letters allegedly were mailed more than a year before plaintiff filed his FDCPA lawsuit. Plaintiff did not learn he was being pursued for this debt until his father was served with a collection lawsuit that had been filed against plaintiff. Since plaintiff did not previously know that he was being pursued by debt collectors about this alleged debt, he could not reasonably have become aware of the false and misleading representations in defendants' collection letters, until the collection lawsuit was served. Following *Mangum*, the district court denied defendants' motion to dismiss based on statute of limitations grounds, because the plaintiff filed his lawsuit within one year of discovering that defendants had mailed him letters that violated the FDCPA, even though the filing was more than one year after the letters were originally mailed. *Ibid* .[9]

9. The court also ruled that plaintiff had adequately alleged that the debt collectors violated the FDCPA by mailing the deceptive letters, even though he denied ever having received them. The violation was complete upon the mailing of collection letters that violated the FDCPA. It was not necessary that the plaintiff receive them. See *Tourgeman v. Collins Fin. Servs*., 2011 U.S. Dist. LEXIS 81070, 13 and cases cited therein.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



The district court ultimately granted summary judgment for defendants on the merits. *Tourgeman v. Collins Fin. Servs*., 2012 U.S. Dist. LEXIS 127815 (S.D. Cal. Aug. 29, 2012). The Ninth Circuit reversed, and directed entry of judgment for plaintiff. It affirmed that the statute of limitations only began to run after plaintiff was put on notice of the violation by service of the state court collection lawsuit. *Tourgeman v. Collins Fin. Servs*., 755 F.3d 1109, 1118, n.5 (9th Cir. 2014). The Ninth Circuit also ruled that even though he had never received the deceptive letters, plaintiff had standing to sue defendants for sending them. *Id.*, at 1114-1118.

Here, the facts of Ms. Dibb's claim squarely line up with those in *Tourgemen*. Defendant claims that in 2012 it sent the Notice of Dishonor containing the unlawful threat that is the subject of this lawsuit. Ms. Dibb did not receive the Notice at the time it was allegedly sent. Dibb Decl., ¶ 16. Instead, she first learned of the Notice after it was served as an exhibit to a summary judgment motion filed in a state court collection action on September 16, 2014. *Id.* Following *Mangum*, the statute of limitations did not begin to run until plaintiff discovered the facts that constitute the FDCPA violation. Even if she should have conducted an investigation into the facts underlying the state court lawsuit after she was served, service was not until October 24, 2013, which is still within the one-year statute of limitations. Since Ms. Dibb filed this lawsuit on October 20, 2014, the statute of limitations does not bar her claims.

**2. Plaintiff Satisfied any Duty of Inquiry She Had Arising from the July 2013 Phone Communications with AllianceOne**

AllianceOne's argument that Ms. Dibb should have learned of the FDCPA violation from a phone call in July 2013, belies the facts and legal standard. During a series of phone calls,[10] AllianceOne told Plaintiff that she had been sued. Ms. Dibb then asked to be connected to the legal department to find out about the lawsuit. Defendant refused to connect her. After the July 10, 2013

10. AllianceOne mentions only one phone call. Ms. Dibb has testified to a series of phone calls on July 10, 2013.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



phone calls Ms. Dibb thought the matter was resolved, and she did not hear again from AllianceOne until, three months later, when she was served with a summons and complaint on October 24, 2013. Dibb Decl. ¶¶ 9-15.

To the extent that Ms. Dibb had a duty of inquiry after she was told there was a lawsuit against her, she satisfied that duty by asking to be connected to the legal department.[11] At that point, AllianceOne, which had sole knowledge of the NOD, frustrated Plaintiff's attempt to gain more information and refused to connect her. Even if she had been connected to the legal department, and obtained a copy of the lawsuit, she would not have learned about the NOD. AllianceOne did not make any reference to the NOD in its complaint and did not file the NOD as an exhibit to the complaint.[12] AllianceOne's bare contention that she would have been provided the NOD had she requested documents related to the collection action is not supported by evidence.

Finally, if there is a dispute about what was said during the phone calls, summary judgment must also be denied. In *Norman-Bloodsaw*, 135 F.3d at 1267, the Ninth Circuit explained that when it is unclear what the plaintiff s should have expected or foreseen, summary judgment dismissal based on the statute of limitations is not proper. There, the plaintiffs complained that the defendant violated the ADA when it performed certain tests without the legal right to do so. *Id.*, at 1265. The district court dismissed on summary judgment, holding that the claims were time barred. *Id.,* It reasoned that a questionnaire the plaintiffs completed outside the statute of limitations and prior to testing, gave them insight into the testing that may be performed, even though it did not specifically state the test that would be completed. *Id*. The Ninth Circuit overturned the district court. *Id.*, at 1266-67. It pointed to the plaintiffs' declarations, which "clearly" stated that they did not know the testing that would be done when filing out the questionnaire. *Id.,* The Court also noted that what the plaintiffs should have expected was largely dependent on "what, if anything, the plaintiffs were told to expect."

11. Defendant does not contend that the Notice of Dishonor of Check was disclosed during the phone call.
12. *See* Complaint, Exhibit 2 to Box Decl.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



*Id.*, Here, as in *Norman-Bloodsaw*, if there is a factual dispute about what was said during the July 10, 2014 phone calls, summary judgment must be denied.

**3. The Court Must Reject Defendant's Argument that It Ignore Binding Ninth Circuit Precedent**

Defendant argues that the discovery rule does not apply to the FDCPA violations because 15 U.S.C. § 1692k(d) sets a one year statute of limitations from the date of the violation, and that this statute overrides the discovery rule. In support of its argument, defendant relies on *TRW Inc. v. Andrews*, 534 U.S. 19, 33, 122 S. Ct. 441, 450, 151 L. Ed. 2d 339 (2001), in which the Supreme Court rejected application of the discovery rule in a case brought under the Fair Credit Reporting Act. However, in *Mangum v. Action Collection Serv., Inc.*, 575 F.3d at 941, *in a case brought under the FDCPA*, the Ninth Circuit considered and rejected *TRW, Inc.* as limiting the application of the discovery rule. The discovery rule is intended to ameliorate the harsh effects of legislatively-enacted limitations periods over which plaintiffs have no control. *In re Park West Galleries, Inc. Mktg. & Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 64693, 7, n. 1 (W.D. Wash. June 25, 2010). Indeed, it makes little sense to shorten the *de facto* statute of limitations by starting the clock ticking long before the plaintiff knows, or should know, that a defendant has violated her rights. Courts in the Ninth Circuit have had no problem following *Mangum* and applying the discovery rule in cases brought under the FDCPA. *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1118, (9th Cir. 2014) (affirming district court applying discovery rule where FDCPA violation was sending deceptive collection letters); *Greco-Rambo v. Prof'l Collection Consultants*, 2011 U.S. Dist. LEXIS 95328, 8, 2011 WL 3759676 (S.D. Cal. Aug. 25, 2011) (discovery rule applies to FDCPA claims brought under 15 U.S.C. § 1692e and sub-sections); *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (discovery rule applies to FDCPA action based on obtaining judgment against non-liable party.); *Townsend v. Nat'l Arbitration Forum, Inc.*, 2012 U.S. Dist. LEXIS 590, 33, 2012 WL 12736 (C.D. Cal. Jan. 4, 2012) (discovery rule applies to FDCPA action alleging violations of 15



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



U.S.C. § 1692e); *Tate v. Bennett Law, PLLC*, 2013 U.S. Dist. LEXIS 57724, 14, 2013 WL 1751289 (D. Or. Apr. 22, 2013) (discovery rule applies to FDCPA action alleging violations of 15 U.S.C. §§ 1692d and 1692e(11)); *Coleman v. Daniel N. Gordon, P.C.*, 2011 U.S. Dist. LEXIS 146329, 9 (E.D. Wash. Dec. 12, 2011) (discovery rule applies to FDCPA action alleging violations of 15 U.S.C. § 1692i in connection with writ of garnishment).

**F. The Notice of Dishonor Served on Ms. Dibb on September 17, 2014 as an Exhibit to a State Court Motion, Constitutes a New FDCPA Violation, within the Statute of Limitations**

Even if Defendant mailed a NOD in 2012, it sent Plaintiff the Notice of Dishonor again in September 2014. This second mailing constitutes a new violation of the FDCPA, occurring well within the statute of limitations. Ms. Dibb first saw the Notice of Dishonor after it was served on her attorney on September 16, 2014. The Notice was attached as an exhibit to AllianceOne's motion for summary judgment filed in the state court collection action. The service of the motion, including the exhibit, constituted a communication made in connection with an attempt to collect a debt, actionable under the FDCPA. This lawsuit was filed less than five weeks later, on October 20, 2014. This is within the FDCPA one-year statute of limitations. 15 U.S.C. § 1692k(d).

Litigation activities are covered by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S. Ct. 1489, 1490 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032, (9th Cir.2010). Any argument by defendant that the second letter attached to AllianceOne's state court summary judgment motion against plaintiff is not actionable because the motion was sent to plaintiff's attorney, rather than plaintiff, would be mistaken.[13] The U.S. Supreme Court decided this issue in *Heintz v. Jenkins*.

13. In *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936, (9th Cir. 2007), (Fletcher, J. dissenting), the appellate panel ruled that communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor are not be covered by the FDCPA. This decision ignores the Supreme Court's decision in *Heintz v. Jenkins*, and if read broadly, conflicts with the other appellate courts that have ruled on this issue. See *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3rd Cir. 2011); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007); *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007).. Guerrero should be limited to its facts. In *Guerrero*, the alleged FDCPA violation was based on sections



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994
NW CONSUMER LAW CENTER
A Non-Profit Law Firm Advocating for Rights of the Consumer

In that case the debt collector attorney argued that the FDCPA did not apply to attorneys engaged in litigation. A unanimous Court rejected this argument. *Id.*, at 292.

The facts in *Heintz* are important. As part of an effort to settle a collection lawsuit, *a lawyer for the debt collector wrote to the debtor's lawyer*. The attorney's letter listed the principal amount of the debt owed under a car loan agreement, and included $ 4,173 owed for insurance, bought by the lender because the debtor had not kept the car insured as she had promised to do. *Id.*, at 293. The debtor, Jenkins, alleged that the insurance policy covered claims unauthorized by the loan agreement, and then filed suit against the attorney, Heintz, for trying to collect an amount not "authorized by the agreement creating the debt," § 1692f(1), and against making a "false representation of . . . the . . . amount . . . of any debt," § 1692e(2)(A). *Id.*, The Supreme Court ruled that this letter to the debtor's attorney was actionable under the FDCPA.

Within the Ninth Circuit, at least one court has held that *Guerrero* applies only to extrajudicial communications, not to lawsuit filings. In *Avery v. Gordon*, 2008 U.S. Dist. LEXIS 86811, 24, 2008 WL 4793686 (D. Or. 2008), the court held that *Guerrero* did not bar an action based on a counterclaim that a debt collector filed and served in a lawsuit. The court reasoned that the communication was a demand for payment on the debtor, despite the fact that it was served only on the attorney. Here, *Heintz v. Jenkins* governs the outcome. By serving a motion on Ms. Dibb's attorney in 2014 that included an allegedly false threat of prosecution, AllianceOne engaged in

---

1692g(a) and (b) of the Act. Section 1692g(b) requires a debt collector, on request by a debtor, to cease collection of the debt until it has obtained either verification of the debt or a copy of a judgment and provided it to the debtor. Guerrero had requested the debt collector to cease communications with him, until the debt collector had verified the debt. Then Guerrero hired an attorney. By letter, Guerrero's attorney requested the debt collector to contact him to resolve the issue. The debt collector responded to the attorney in writing. Then Guerrero sued, alleging that that the debt collector failed to verify the debt, before responding to the debtor's attorney. The Ninth Circuit could have resolved *Guerrero* easily, simply by stating that Guerrero's attorney, as the agent for Guerrero, had waived Guerrero's request to cease contact, when the attorney requested the debt collector to contact him. The Ninth Circuit cannot overrule the U.S. Supreme Court. By limiting *Guerrero* to its facts, the case can be reconciled with *Heintz v. Jenkins*.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



conduct that is actionable under the FDCPA. Therefore, its motion for summary judgment must be denied.

**G. <u>FDCPA Violations Bared by the Statute of Limitations Remain Per Se Violations of Washington's Consumer Protection Act.</u>**

As this Court has already held in this case, AllianceOne's FDCPA violations are *per se* violations of Washington's Consumer Protection Act 19.86 RCW ("CPA"). Order On Motion to Dismiss, filed 12/16/2015, p. 6, Docket No. 12, citing *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 53, 204 P.3d 885 (2009). The fact that an FDCPA claim may be procedurally barred by a statute of limitations does not prevent an aggrieved consumer from seeking relief under the CPA. As the Washington Supreme Court explained in *Panag*, "When a violation of debt collection regulations occurs, it constitutes a *per se* violation of the CPA and the FTCA under state and federal law, reflecting the public policy significance of this industry." *Id.* at 53. An FDCPA violation remains a *per se* CPA violation, even if a statutory limitations period bars relief under federal law. The statute of limitations for CPA violations is four years. RCW 19.86.120. Therefore, Plaintiff's CPA claim is timely.

**IV. <u>CONCLUSION</u>**

WHEREFORE, for the reasons stated above, plaintiff Margaret Dibb respectfully requests that this Court deny defendant's Motion for Summary Judgment. In the alternative, Plaintiff request the Court to continue Defendant's Motion until after the issue of filing a First Amended Complaint is resolved, and to continue the motion for four months to permit Plaintiff and opportunity to conduct discovery regarding the alleged 2012 mailing of a Notice of Dishonor of Check by a non-party vendor.



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994



DATED this 9th day of March, 2015.

/s/ Kathleen Box
Kathleen Box WSBA #45254
Attorney for Plaintiff

DATED this 9th day of March, 2015.

/s/ Samuel R. Leonard
Samuel R. Leonard WSBA #46498
Attorney for Plaintiff

DATED this 9th day of March, 2015.

/s/ Paul Arons
Paul Arons WSBA #47599
Attorney for Plaintiff

DATED this 9th day of March, 2015.

/s/ David A. Leen
David A. Leen WSBA #3516
Attorney for Plaintiff



Northwest Consumer Law Center
520 EAST DENNY WAY
SEATTLE, WASHINGTON 98122
(206) 805-0989
FAX (866) 526-9994

