1        THE HONORABLE ROBERT J. BRYAN

2

3

4

5

6                    U.S. DISTRICT COURT
7            WESTERN DISTRICT OF WASHINGTON

8   MARGARET DIBB, SHANUA OVIST,
    SAMANTHA MASON, and WENDY
9   GONDOS on behalf of herself and on behalf of        NO. 3:14-CV-05835-RJB
    others similarly situated,
10                                                       **PLAINTIFFS' MOTION FOR CLASS
11                                                       CERTIFICATION**

12                        Plaintiffs,                    **Noted for Consideration: 11/20/2015**

13           vs.

14   ALLIANCEONE MANAGEMENT
     RECEIVABLES, INC.,
15
                          Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.tmdwlaw.com

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

    A.   A Class Action is the Most Effective Means to Both
        Rein in and Remedy Defendant's Unlawful Debt
        Collection Practices .............................................................................. 3

    B.   Defendant Sent Plaintiffs the Same Unlawful Notice
        of Dishonor Form Letters It Sent to Thousands
        of Washington Consumers ................................................................... 3

III. FACTUAL AND LEGAL BACKGROUND .................................................... 4

    A.   Defendant's Operations in Washington State are Uniform ............... 4

    B.   Defendant's Notice of Dishonor Violates Washington
        Law and the FDCPA ............................................................................ 5

        1.   Defendant's Notice of Dishonor Violates
            15. U.S.C. §1692e(4) and (7) ................................................. 7

        2.   Because its Notice of Dishonor Does Note Conform to
            Statutory Requirements, State and Federal Law Prohibit
            Defendant From Seeking to Collect Fees ............................... 8

            a.   The Washington Collection Agency Act
                Prohibits Collection of Fees Not Expressly
                Authorized by Statute ................................................. 8

            b.   The FDCPA Prohibits the Collection
                of Fees Not Permitted by Law .................................... 9

            c.   AllianceOne Has Collected Fees to Which
                it is Not Entitled ........................................................... 9

    C.   Defendant's Debt Collection Practices Violated the FDCPA
        by Failing to Include an Effective Validation Notice
        in the Initial Communication to Check Writers .................................. 9

    D.   Defendant's Debt Collection Practices Violated the
        Washington Consumer Protection Act .............................................. 11

        1.   Defendant's Notice of Dishonor Letters Constitute
            a Per Se Violation of the CPA ............................................. 11

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - i

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

2.     Defendant's Notice of Dishonor Letters are
Unfair and Deceptive.................................................................. 11

3.     Defendant's Unfair and Deceptive Acts
Caused Injury to Plaintiffs and Class Members .................................. 12

IV.     ARGUMENT AND AUTHORITY ............................................................. 13

A.    Plaintiffs Satisfy the Class Certification Requirements
Under Rule 23(a) ...................................................................... 13

1.     Plaintiffs Satisfy the Numerosity Requirement.................................... 14

2.     There Are Numerous Common Questions of Law and Fact ................ 15

3.     The Named Plaintiffs' Claims Are Typical of the Class Claims.......... 16

4.     The Named Plaintiffs and Their Counsel Will Fairly
and Adequately Protect the Interests of the Class ................................ 17

B.    Plaintiffs Meet the Requirements for Certification
Under Rule 23(b)(3) .................................................................. 18

1.     Common Factual and Legal Questions Concerning
Defendant's Notice of Dishonor Form Letters
Predominate Over Any Individual Damages Issues............................ 19

a.     The Washington Statutory Claims............................................. 19

b.     The FDCPA Claims.................................................................. 20

c.     The CPA Claims....................................................................... 20

2.     Plaintiffs Satisfy the Superiority Requirement.................................... 21

3.     This Case Presents No Particular Management Difficulties ............... 23

4.     Constitutionally Sound Notice Can Be Provided to
Class Members ........................................................................ 24

V.     CONCLUSION .............................................................................. 24

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - ii

1

## TABLE OF AUTHORITIES

**Page**

2

3

### STATE CASES

4
*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
   105 Wn.2d 778, 719 P.2d 531 (1986) ................................................................. 11, 12

5

6
*Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC,*
   134 Wn. App. 210, 135 P.3d 499 (2006).................................................................. 12

7
*Klem v. Wash. Mut. Bank,* 176 Wn.2d 771, 295 P.3d 1179 (2013)................................... 11, 12

8
*Magney v. Lincoln Mut. Sav. Bank,* 34 Wn. App. 45, 659 P.2d 537 (1983) ........................... 12

9
*Panag v. Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 204 P.3d 885 (2009)................... 11

10
*Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977)................................................................. 8

11

12
*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. __, 131 S. Ct. 2541(2011)............................... *passim*

13

### FEDERAL CASES

14
*Agne v. Papa John's Int'l,* 286 F.R.D. 559 (W.D. Wash. 2012)................................................22

15

16
*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ..............................................................19

17
*Amone v. Aveiro,* 226 F.R.D. 677 (D. Haw. 2005)....................................................................14

18
*Ballard v. Equifax Check Servs.,* 186 F.R.D. 589 (E.D. Cal. 1999)....................... 14, 18, 20, 22

19
*Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708 (9th Cir. 2010) ..........................................13

20
*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975) ....................................................................21

21
*Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973 (9th Cir. 2008)................................................3

22
*Campion v. Credit Bureau Servs., Inc.,* 206 F.R.D. 663 (E.D. Wash. 2001) ...........................12

23
*Chamberlan v. Ford Motor Co.,* 402 F.3d 952 (9th Cir. 2005)..................................................19

24
*Clark v. Bonded Adjustment Co., Inc.,* 204 F.R.D. 662 (E.D. Wash. 2002) ...............2, 8, 12, 23

25
*Connor v. Automated Accounts, Inc.,* 202 F.R.D. 265 (E.D. Wash. 2001) .....................2, 21, 23

26
*del Campo v. Am. Corrective Counseling Servs., Inc.,* 254 F.R.D. 585 (N.D. Cal. 2008)...........2

27

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - iii

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

*Deposit Guaranty National Bank v. Roper,*
   445 U.S. 326, 100 S.Ct. 1166, 63 L. Ed. 2d 427 (1980) ................................. 18

*Duran v. Credit Bureau of Yuma, Inc.,* 93 F.R.D. 607 (D. Az. 1982) ......................................... 18

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970 (9th Cir. 2011) .................................. 17

*Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015 (9th Cir. 2012) ................................ 3, 17

*Gonzalez v. U.S. Dept. of Homeland Sec.,* 239 F.R.D. 620 (W.D. Wash. 2006) ...................... 14

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ............................................. 16, 17

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1988) ......................................... 15, 18

*Hansen v. Ticket Track, Inc.,* 213 F.R.D. 412 (W.D. Wash. 2003) .................................... *passim*

*Haynes v. Logan Furniture Mart. Inc.,* 503 F.2d 1161 (7th Cir. 1974) ..................................... 22

*Hunt v. Check Recovery Sys., Inc.,* 241 F.R.D. 505 (N.D. Cal. 2007) ................................. 15, 20

*In re Wash. Mut. Mortgage-Backed Secs. Litig.,* 276 F.R.D. 658 (W.D. Wash. 2011) ............. 15

*Irwin v. Mascott,* 96 F.Supp.2d 968 (N.D. Cal. 1999) .......................................... 2, 14

*Jiminez v. Allstate Ins. Co.,* 765 F.3d 1161 (9th Cir. 2014) ...................................... 19

*Jordan v. County of Los Angeles,* 669 F.2d 1311 (9th Cir.1982) ......................................... 14

*Keele v. Wexler,* 149 F.3d 589 (7th Cir. 1998) ........................................................ 15, 20

*Kirkpatrick v. Ironwood Communications, Inc.,*
   Case No. c05-1428JLR, 2006 WL 2381797 at *3 (W.D. Wash. Aug. 16, 2006) .......... 14

*Lensch v. Armada Corp.,* 795 F. Supp. 2d 1180 (W.D. Wash. 2011) ................................ *passim*

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust,*
   268 F.R.D. 670 (W.D. Wash. 2010) ......................................................................... 14

*Mortimore v. FDIC,* 197 F.R.D. 432 (W.D. Wash. 2000) ........................................ 22

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) .......................................... 24

*Palmer v. Stassinos*, 233 F.R.D. 546 (N.D. Cal. 2006) .......................................... 15

*Quiroz v. Revenue Prod. Mgmt., Inc.,* 252 F.R.D. 438 (N.D. Ill. 2008) ................................. 21

*Rodriguez v. Carlson,* 166 F.R.D. 465 (E.D. Wash. 1996) .......................................... 21

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

*Rodriguez v. Hayes,* 591 F.3d 1105 (9th Cir. 2009) ................................................. 15

*Ross v. RBS Citizens, N.A.,* 667 F.3d 900 (7th Cir. 2012) ........................................ 15

*Schwarm v. Craighead,* 233 F.R.D. 655 (E.D. Cal. 2006) ........................................ 22

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) .................................................. 13

*Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750 (7th Cir. 2014) .................................. 19

*Swanson v. Southern Or. Credit Serv.,* 869 F.2d 1222 (9th Cir. 1988).............................. 10, 20

*Terran v. Kaplan,* 109 F.3d 1428 (9th Cir. 1997) ............................................... 10, 11

*United Steel, Paper & Forestry, Rubber, Mfg. Energy,*
*Allied Indus. & Serv. Workers Intern. Union AFL-CIO, CLC*
*v. Conoco Phillips Co.,*
    593 F.3d 802 (9th Cir. 2010) ......................................................... 13

*Voris v. Resurgent Capital Servs., L.P.,* 494 F. Supp. 2d 1156 (S.D. Cal. 2007 .................... 10

*Zeisel v. Diamond Foods, Inc.,*
    No. C 10-01192 JSW, 2011 WL 2221113, *10 (N.D. Cal. June 7, 2011) .................. 13

### STATE STATUTES

RCW 19.16 .................................................................................. *passim*

RCW 19.16.250 ............................................................................. *passim*

RCW 19.16.440 ............................................................................... 9, 11

RCW 19.16.450 ................................................................................... 8

RCW 19.86 ................................................................................ 1, 9, 11

RCW 19.86.920 ................................................................................. 11

RCW 62A.3-530(1) ........................................................................... 4, 8

RCW 62A.3-540 ............................................................................. *passim*

### FEDERAL STATUTES

15 U.S.C. §§ 1692 ........................................................................ *passim*

15 U.S.C. § 1692e .......................................................................... 3, 7

15 U.S.C. § 1692f(1) ..................................................................... *passim*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - v

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

15 U.S.C. § 1692g(a) ................................................................................... 10, 16

15 U.S.C. §§ 1692k(a) ...................................................................................... 13

15 U.S.C. § 1692k(a)(2)(B) .............................................................................. 13

15 U.S.C. § 1692n ............................................................................................. 4

## FEDERAL RULES

Fed. R. Civ. P. 23(a) ................................................................................. *passim*

Fed. R. Civ. P. 23(a)(1) ................................................................................... 14

Fed. R. Civ. P. 23(a)(4) ................................................................................... 17

Fed. R. Civ. P. 23(b)(3) ............................................................................ *passim*

Fed. R. Civ. P. 23(c)(2) ................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(C) ............................................................................. 17

## OTHER AUTHORITIES

Senate Report No. 95-382, 95th Cong., 1st. Sess., p. 5,
    reprinted in 1977 U.S.C.C.A.N., 1695, 1699 ............................................... 3

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

# I.  INTRODUCTION

Defendant AllianceOne Receivables Management, Inc. ("Defendant" or "AllianceOne") is a national debt collector that has engaged in a systematic scheme of unfair and deceptive collection practices in Washington.  These abuses center on the standard form notice that AllianceOne sends as its initial communication to consumers when attempting to collect dishonored checks, and includes: (1) unlawful threats of criminal prosecution; (2) the collection of millions of dollars in unlawful fees; and (3) the failure to include an effective notice of important consumer rights mandated by federal law.  AllianceOne's collection practices are prohibited by the Washington Collection Agency Act, RCW 19.16 *et seq*. ("CAA"), and violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA") and the Washington Consumer Protection Act, RCW 19.86, *et seq*. ("CPA"), as set forth below.

Named Plaintiffs Margaret Dibb, Shauna Ovist, Samantha Mason and Wendy Gondos ("Plaintiffs") bring this action on behalf of the following proposed Class and Sub-Classes:

> Umbrella Class: All persons who wrote checks within the
> State of Washington, to whom AllianceOne sent, at any
> time since October 20, 2010, a Notice of Dishonor of
> Check in connection with an allegedly unpaid check, in a
> form substantially similar to the one allegedly sent to
> Plaintiffs.[1]

> FDCPA Sub-Class: All persons in the umbrella class whose
> check was written to the Washington Department of
> Licensing to pay a fee incurred primarily for personal,
> family or household purposes, to whom AllianceOne sent a
> NOD on or after October 20, 2013.

> CPA Sub-class: All persons in the umbrella class, to whom
> AllianceOne sent a NOD on or after October 20, 2010, and
> who paid any fees to Defendant.

Plaintiffs seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so the claims of thousands of Washington consumers can be resolved in one fair and

---

[1] In their Third Amended Complaint, Plaintiffs defined the Umbrella Class to include all persons who reside in the State of Washington to whom AllianceOne sent a form NOD.  Here, Plaintiffs request that definition be modified slightly to include all persons who wrote checks within the State of Washington to whom AllianceOne sent its form NOD.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 1

1  efficient proceeding.  Certification is appropriate because the numerous questions of law and

2  fact common to all proposed class members predominate over any individualized issues.

3  Moreover, Plaintiffs' claims and the claims of the proposed class members arise out of a

4  common nucleus of operative facts: Defendant's use of an unlawful and deceptive form notice.

5      As courts have found in similar cases, including class actions under the FDCPA, class

6  treatment is both manageable and superior to other methods of adjudication.  *See, e.g., del*

7  *Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585 (N.D. Cal. 2008) (certifying

8  class of hundreds of thousands of consumers who were sent the same standard form letters,

9  threatening prosecution and demanding unlawful fees); *Irwin v. Mascott*, 96 F.Supp.2d 968

10  (N.D. Cal. 1999) (certifying class against volume check collector where consumers alleged

11  mass mailings of computer-generated letters demanding check fees and threatening to sue the

12  check writer); *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589 (E.D. Cal. 1999) (certifying

13  class of check writers in action alleging that collection agency sent more than one million

14  computer-generated letters demanding check fees).  Indeed, courts in Washington regularly

15  certify class actions under the FDCPA.  *See, e.g., Clark v. Bonded Adjustment Co., Inc.*, 204

16  F.R.D. 662 (E.D. Wash. 2002) (certifying class of Washington consumers alleging debt

17  collector attempted to collect inflated fees in violation of the FDCPA and CAA); *Connor v.*

18  *Automated Accounts, Inc.*, 202 F.R.D. 265, 271 (E.D. Wash. 2001) (certifying class of

19  Washington consumers in action against debt collection agency for form letters that failed to

20  include proper validation notice in violation of the FDCPA); *Hansen v. Ticket Track, Inc.*, 213

21  F.R.D. 412 (W.D. Wash. 2003) (certifying class of Washington consumers alleging collection

22  agency attempted to collect inflated fees in violation of the FDCPA, CAA and CPA).

23      Plaintiffs respectfully request certification of the Class and Sub-Classes defined above.

24  In addition, Plaintiffs respectfully ask the Court to designate Plaintiffs Dibb, Ovist, Mason and

25  Gondos as Class representatives; appoint the Leen & O'Sullivan, PLLC, Sam Leonard, the Law

26  Office of Paul Arons, and the Terrell Marshall Law Group PLLC as Class counsel; and order

27  that notice of the action be provided to the Class.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

## II.  BACKGROUND

**A.    A Class Action is the Most Effective Means to Both Rein in and Remedy Defendant's Unlawful Debt Collection Practices**

Congress enacted the FDCPA to eliminate unfair, abusive and deceptive collection practices used by many debt collectors.  *See, e.g.,* 15 U.S.C. § 1692(a) ("There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.").  The FDCPA prohibits debt collectors from using misrepresentation and deception in connection with the collection of any debt.  *See* 15 U.S.C. § 1692e.  Congress views the FDCPA as "primarily self-enforcing," through lawsuits brought by the consumers who have been subjected to collection abuses.  *Senate Report No. 95-382,* 95th Cong., 1st. Sess., p. 5, *reprinted* in 1977 U.S.C.C.A.N., 1695, 1699; *see also Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008) (noting that "congress chose a private attorney general approach to assume enforcement of the FDCPA") (internal marks and citations omitted).  Private lawsuits such as this one are therefore necessary to meet the congressional goal that consumers, acting as private attorney generals, are responsible for enforcing the FDCPA.  *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (finding "[t]he FDCPA is a consumer protection statute and was intended to permit, even encourage, [private litigants] to act as private attorney generals to pursue FDCPA claims").

**B.    Defendant Sent Plaintiffs the Same Unlawful Notice of Dishonor Form Letters It Sent to Thousands of Washington Consumers**

Defendant collects debts, including dishonored checks, for multiple Washington public and private entities.  *See* Declaration of Samuel Leonard ("Leonard Decl.") ¶ 3, Exs. A – D; Ex. E at 19:15 – 20:8 (testifying that Defendant collects dishonored checks for "probably a hundred clients").  In collecting checks, AllianceOne uses the same letter series for all of its Washington clients, which includes a form Notice of Dishonor ("NOD") and a form Notice of Placement Letter ("NTC").  *See* Leonard Decl., Exs. F – H; Ex. E at 48:6 – 50:16, 51:24 – 53:11.

Defendant purports to rely upon the Washington statutory scheme related to negotiable instruments, chapter 62A.3 RCW, to dramatically increase the fees it seeks from Washington consumers who do not immediately pay after being sent an NOD.  Part of that statute permits,

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

but does not require, a collection agency to include in its initial written demand, a threat that the check writer may be criminally charged if he or she does not pay the check amount within thirty-three days of the letter being mailed.  *See* RCW 62A.3-530(1).  This threat violates the FDCPA, which preempts conflicting state collection laws.  *See* 15 U.S.C. § 1692n.

If this violation was not clear to Defendant from Section 1692n, any confusion should have been eliminated when Judge Leighton ruled on this precise issue in 2011 in *Lensch v. Armada Corp.*, 795 F. Supp. 2d 1180, 1184-87 (W.D. Wash. 2011) (finding the language threatening criminal prosecution that is permitted by RCW 62A.3-540 is "preempted by the FDCPA").  Additionally, AllianceOne has improperly modified the statutory form notice by shortening the time for a check writer to respond, from thirty-three days to thirty days from the date the letter was postmarked.  Thus, AllianceOne violates state law and the FDCPA, and also forfeits its right to collect, or attempt to collect, any more than the face amount of the check as set forth below.

### III.  FACTUAL AND LEGAL BACKGROUND

**A.    Defendant's Operations in Washington State Are Uniform**

Teleperformance is a global corporation that owns and controls 100% of AllianceOne.  *See* Leonard Decl., Ex. M.  AllianceOne operates a high volume collection business throughout the United States.  *Id.*, Ex. N.  This case involves AllianceOne's check collection practices in Washington.  AllianceOne collects checks throughout the State of Washington for both public and private entities.  *Id.*, Exs. D, O – Q.  AllianceOne used the same defective NOD form and attempted to collect the same fees and penalties that it sought from Plaintiffs in all of its check collection practices in Washington from at least October 20, 2010, the beginning of the class period, until at least October 24, 2015, four days after this lawsuit was filed.  *Id.*, Ex. E at 48:6 – 50:16, 51:24 – 53:1; Ex. F (*see* supplemental response to Interrogatory No. 19) ("On October 24, 2014, the form was revised to remove the law enforcement language").

1.    Margaret Dibb

In 2012, Ms. Dibb went to the Washington State Department of Licensing ("DOL") to register her vehicle, which is for her personal use.  Dkt. No. 58 ¶ 11.  To pay for the

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1   registration, she wrote a check for $90.25. *Id.* In July 2013, she returned to the DOL to renew

2   her registration. *Id.* ¶ 12. While there, the clerk informed her that her check from the previous

3   year had not cleared, that DOL had assigned the check to AllianceOne for collection, that

4   AllianceOne had a hold on her DOL account, and that she could not register her vehicle unless

5   AllianceOne released the hold. *Id.* ¶ 13.

6        Ms. Dibb called AllianceOne to settle her account and paid $98.77 to release the hold.

7   *Id.* ¶ 14. On October 24, 2013, AllianceOne served her with a state court complaint,

8   *AllianceOne Receiveables Mgmt., Inc., v. Margaret Dibb*, filed in King County District Court.

9   *Id.* ¶ 16. In September 2014, AllianceOne filed and served a motion for summary judgment in

10   the state court lawsuit. *Id.* ¶ 19. AllianceOne attached as an exhibit to that motion, an NOD

11   that it claims it sent to Ms. Dibb on September 25, 2012. The NOD that Defendant has

12   produced as the one it sent to Ms. Dibb is the same as the NOD sent to all putative class

13   members *Id.*; *see also* Leonard Decl., Ex. I. Ms. Dibb paid AllianceOne a total of $543.77. Exs.

14   R – S.

15       2.   <u>Shauna Ovist</u>

16        In approximately May 2014, Ms. Ovist wrote a check to the DOL to renew her driver's

17   license. *See* Leonard Decl., Ex. T at 16:19 – 17:3. Ms. Ovist's check to the DOL was

18   dishonored on presentment. *Id.* AllianceOne sent Ms. Ovist its standard NOD dated May 15,

19   2014. *See* Leonard Decl, Ex. J. Ms. Ovist paid AllianceOne a total of $139.74. *See* Dkt. No.

20   58 ¶ 32; *see also* Leonard Decl., Ex. U.

21       3.   <u>Samantha Mason</u>

22        In approximately June 2014, Ms. Mason wrote a check to the DOL to renew her tabs.

23   *See* Dkt. No. 58 ¶ 35. Ms. Mason's check to the DOL was dishonored on presentment. *Id.* ¶

24   36. AllianceOne sent Ms. Mason its standard NOD form dated September 16, 2014. *Id.* ¶¶ 37

25   – 38; *see also* Leonard Decl., Ex. K. Ms. Mason paid AllianceOne a total of $200.14. *See*

26   Leonard Decl., Ex. V.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

4.    <u>Wendy Gondos</u>

In approximately May 2014, Ms. Gondos wrote a check to the DOL to renew her tabs. *See* Dkt. No. 58 ¶ 42.  Ms. Gondos's check to the DOL was dishonored on presentment.  *Id.* ¶ 43.  AllianceOne sent Ms. Gondos its standard NOD form dated September 16, 2014.  *Id.* ¶¶ 44 – 45; *see also* Leonard Decl., Ex. L.  Ms. Gondos paid AllianceOne a total of $188.20.  *See* Leonard Decl., Ex. W.

**B.    Defendant's Notice of Dishonor Violates Washington Law and the FDCPA**

Under Washington law, a collection agency seeking to collect on a dishonored check is only entitled to collect check fees if it provides a notice of dishonor in the form set forth in RCW 62A.3-540:

> <u>If the collection agency or its agent provides a notice of dishonor in the form provided in RCW 62A.3-540</u> to the drawer and the check amount plus the reasonable handling fee are not paid within thirty-three days after providing the notice of dishonor, <u>then…. the drawer of the instrument is liable for payment of interest at the rate of twelve percent per annum from the date of dishonor, and a cost of collection of forty dollars or the face amount of the check,</u> whichever is less, payable to the collection agency.  (Emphasis added.)

Instead of adhering to the statutory scheme, AllianceOne altered the statutory Notice of Dishonor of Check form in its favor to shorten the time period for response and to eliminate consumer warnings.  From the beginning of the class period until at least October 24, 2014, AllianceOne used the same defective NOD form when collecting Washington checks, which varied from the statutory form in the following respects:

| Statutory Form | AllianceOne Form |
|---|---|
| You are CAUTIONED that unless you pay the amount of this check and a handling fee of ..... **within thirty-three days** after the date this letter is postmarked or personally delivered, you may very well have to pay the following additional amounts:<br><br>(Emphasis added.) | You are CAUTIONED that unless you pay the amount of this check and a handling fee of ..... **within thirty days** after the date this letter is postmarked or personally delivered, you may very well have to pay the following additional amounts:<br><br>(Emphasis added.) |

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

| | |
|---|---|
| (a) Costs of collecting the amount of the check in the lesser of the check amount or forty dollars; | (a) Costs of collecting the amount of the check in the lesser of the check amount or forty dollars, plus, in the event of legal action, court costs and attorney's fees which will be set by the court; |
| (b) Interest on the amount of the check which shall accrue at the rate of twelve percent per annum from the date of dishonor; and | (b) Interest on the amount of the check which shall accrue at the rate of twelve percent per annum from the date of dishonor; and, |
| (c) Three hundred dollars or three times the face amount of the check, whichever is less, plus court costs and attorneys' fees, byaward of the court in the event of legal action. **Note that this caution regarding increased amounts in any possible legal action is advisory only and should not be construed as a representation or implication that legal action is contemplated or intended**. | (c) Three hundred dollars or three times the face amount of the check, whichever is less, by award of the court. |
| (Emphasis added.) | (AllianceOne's form NOD omits the cautionary notice regarding legal action.) |
| You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this **check within thirty-three days** after the date this letter is postmarked. | You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check **within thirty days** after the date this letter is postmarked. |
| (Emphasis added.) | (Emphasis added.) |

1.    <u>Defendant's Notice of Dishonor Violates 15 U.S.C. § 1692e(4) and (7)</u>

In 2011, in *Lensch,* 795 F. Supp. 2d 1180, the district court ruled that the statutory language of RCW 62A.3-540 regarding criminal charges, quoted above violates the FDCPA, specifically 15 U.S.C. §§ 1692e(4) and 1692e(7).  In that case, the plaintiff received a notice of dishonor containing the threat of criminal prosecution permitted by RCW 62A.3-540.  On the plaintiff's motion for partial summary judgment, the court ruled in favor of plaintiff finding that Washington's statute authorizing the defendant to caution a debtor about the possibility of criminal proceedings was preempted by the FDCPA.  *Lensch*, 795 F. Supp. 2d at 1185-87.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    When collecting checks in Washington, AllianceOne used an NOD form that included

2  the threat regarding law enforcement that the *Lensch* court ruled is an unequivocal violation of

3  the FDCPA.  *See* Leonard Decl., Exs. G, I – L; *see also* Ex. F (Interrogatory No. 7).

4       2.    Because its  Notice of Dishonor Does Not Conform to Statutory Requirements,
            State and Federal Law Prohibit Defendant From Seeking to Collect Fees

5

6            a.    *The Washington Collection Agency Act Prohibits Collection of Fees Not
                 Expressly Authorized by Statute*

7    The CAA prohibits a collection agency from threatening consumers with criminal

8  prosecution.  *See* RCW 19.16.250(13).  It also prohibits a collection agency from

9  communicating to consumers that they owe additional fees that may not legally be added to the

10  existing debt and from collecting or attempting to collect additional fees not expressly

11  authorized by statute.  *See*  RCW 19.16.250(15), (21).  In Washington, when collecting an

12  unpaid check, a collection agency is initially entitled to recover the amount of the check, plus a

13  reasonable handling fee.  RCW 62A.3-530(1).  Unless it sends a Notice of Dishonor of Check

14  in the form prescribed by statute, however, a collection agency is not entitled to collection costs

15  or any other fees.  Moreover, pursuant to RCW 19.16.450, a collection agency that violates any

16  provision of RCW 19.16.250 is barred from seeking any amount other than the amount of the

17  original claim.  Here, that is the face amount of the check.  RCW 19.16.450 explicitly prohibits

18  a collection agency that violates any provision of RCW 19.16.250 from "ever" recovering "any

19  interest, service charge, attorneys' fees, collection costs, delinquency charge, or any other fees

20  or charges otherwise legally chargeable to the debtor on such claim." (Emphasis add); *see also*

21  *Strenge v. Clarke*, 89 Wn.2d 23, 25, 569 P.2d 60 (1977) (finding trial court "properly refused to

22  award any sum for court costs, collection costs, attorneys' fees, or other costs, or interest"

23  where debt collector violated certain provisions of the CAA, RCW 19.16.250).

24    By sending out defective NODs, AllianceOne lost any state law permission to threaten

25  criminal prosecution and thereby violated RCW 19.16.250(13).  AllianceOne also lost its right

26  to collect or attempt to collect check fees and penalties and its NODs also therefore violated

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  RCW 19.16.250 (15) and (21).  These violations of the CAA also constitute *per se* violations of

2  the Washington Consumer Protection Act, RCW 19.86 *et seq.* ("CPA").  *See* RCW 19.16.440.

3          b.    *The FDCPA Prohibits the Collection of Fees Not Permitted by Law*

4        The FDCPA likewise prohibits a debt collector from collecting "any amount (including

5  any interest, fee, charge, or expense incidental to the principal obligation) unless such amount

6  is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C.

7  § 1692f(1).  As set forth above, the law does not permit AllianceOne to collect the collection

8  costs, handling fees, attorneys' fees, treble damages, interest or any of the additional fees that it

9  sought from Plaintiffs and putative class members because AllianceOne did not use the NOD

10  form prescribed by RCW 62A.3-540.  As a result, AllianceOne has collected amounts not

11  "expressly… permitted by law."  15 U.S.C. § 1692f(1).  This is a violation of the FDCPA.

12          c.    *AllianceOne Has Collected Fees to Which it is Not Entitled*

13        In short, AllianceOne engaged in practices prohibited by at least three specific sub-

14  sections of RCW 19.16.250.  It was therefore never entitled to collect any amounts other than

15  the face amount of the check.  Since Defendant was attempting to collect a fee above the face

16  amount of the check from every person to whom it sent its altered NOD form, it violated both

17  the CAA prohibition on attempting to collect fees not expressly authorized by statue, RCW

18  19.16.250(21), and the FDCPA prohibition on attempting to collect fees that are not permitted

19  by law.  15 U.S.C. § 1692f(1).

20  **C.**    **Defendant's Debt Collection Practices Violated the FDCPA by Failing to Include an Effective Validation Notice in the Initial Communication to Check Writers**

22        The FDCPA requires that:

23            Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

26            (1)  the amount of the debt;

27            (2)  the name of the creditor to whom the debt is owed;

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This is commonly known as the "validation notice" requirement. "[T]o be effective, the [validation] notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

AllianceOne's validation notice does not comply with these requirements. As part of its initial communication to Plaintiffs and class members, AllianceOne sends its form NTC letter, which includes a facially compliant validation notice. *See* Leonard Decl., Ex. H; *see also* Ex. E at 48:6 – 50:16, 51:24 – 53:1. The other form in AllianceOne's initial communication to Plaintiffs and class members, however, is its form NOD, which threatens increased charges and possible criminal prosecution if payment is not made within thirty days. This stood in threatening contradiction to the debtor's right to dispute the debt and demand validation within thirty days of receipt of the collection demand. "[T]he rationale for imposing liability for validation notices containing contradictory or overshadowing language, even when the notices actually contain the advisements required by § 1692g(a), is to avoid debtor confusion regarding their rights under the FDCPA." *Voris v. Resurgent Capital Servs., L.P.*, 494 F. Supp. 2d 1156, 1170 (S.D. Cal. 2007). Whether any validation notice met the requirements of the FDCPA is an issue of law, that may be decided for the entire class. *See Terran v. Kaplan*, 109 F.3d 1428,

1432 (9th Cir. 1997) (whether language in a collection letter overshadows or contradicts the

validation notice so as to confuse a less sophisticated debtor is a question of law).

**D.    Defendant's Debt Collection Practices Violated the Washington Consumer Protection Act**

Courts liberally construe the Washington CPA to protect the public and promote fair

competition.  *See* RCW 19.86.920.  To state a claim under the CPA, a plaintiff must allege: (1)

an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest

impact; (4) injury to plaintiff in his or her business or property; and (5) causation.  *Hangman*

*Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

A claim under the CPA "may be predicated upon a per se violation of statute, an act or practice

that has the capacity to deceive a substantial portions of the public, or an unfair or deceptive act

or practice…."  *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

1.    Defendant's Notice of Dishonor Letters Constitute a Per Se Violation of the CPA

The Washington Legislature has declared violations of the CAA constitute per se unfair

acts or practices for the purpose of the application of the CPA.  *See* RCW 19.16.440; *see also*

*Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 43, 204 P.3d 885 (2009) ("Our

legislature has declared that violations of the regulations applicable to [the debt collection]

industry implicate the public interest and constitute a per se violation of the CPA.").  Further,

as this Court held in its Order on Motion to Dismiss (Dkt. No. 12), "under Washington law, a

violation of the FDCPA is a per se violation of the CPA."

2.    Defendant's Notice of Dishonor Letters are Unfair and Deceptive

To demonstrate that a defendant's conduct was unfair or deceptive, "a plaintiff need not

show that the act in question was intended to deceive, but that the act had the capacity to

deceive a substantial portion of the public."  *Hangman Ridge*, 105 Wn.2d at 785.  The CPA is a

particularly appropriate vehicle for reaching collection practices.  *See Panag*, 166 Wn.2d 27,

204 P.3d 885 (2009) (finding debt collection activities that are not regulated by the FDCPA or

CAA "may constitute unfair and deceptive practices under the broad scope of the CPA").  "By

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  broadly prohibiting 'unfair or deceptive acts or practices… the legislature intended to provide

2  sufficient flexibility to reach unfair or deceptive conduct that inventively evades regulation."

3      An act or practice is unfair under the CPA if it offends public policy or is "unethical,

4  oppressive, or unscrupulous, among other things." *Klem*, 176 Wn.2d at 786 (citing *Magney v.*

5  *Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 57, 659 P.2d 537 (1983)).  An act or practice is

6  deceptive if it "misleads or misrepresents something of material importance." *Holiday Resort*

7  *Cmty. Ass'n v. Echo Lake Assocs.*, *LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).  Falsely

8  threatening "criminal charges" to collect unlawful fees is inherently unethical, oppressive, or

9  unscrupulous.

10      3.    Defendant's Unfair and Deceptive Acts Caused Injury to Plaintiffs and Class
              Members

11      Finally, the last two elements of *Hangman Ridge* are met, as AllianceOne's actions

12  have caused injury to Plaintiffs and Class members.  Plaintiff Dibb paid approximately $453.00

13  in fees, Plaintiff Ovist paid approximately $84 in fees, Plaintiff Mason paid approximately

14  $111 in fees, and Plaintiff Gondos paid approximately $80 in fees, and the fees other putative

15  class members paid to AllianceOne can be easily determined through AllianceOne's records.

16  *See* Dkt. No. 58 ¶¶ 11 – 15, 31 – 32; *see also* Leonard Decl., Exs. R – S, T – W.  AllianceOne

17  was not entitled to the fees it collected from Plaintiffs and proposed class members, and

18  therefore violated the CPA.

19      The central legal question that is of importance to Plaintiffs' CPA claims and common

20  to all proposed class members is whether AllianceOne's NOD's are unfair or deceptive. *See*

21  *Campion v. Credit Bureau Servs., Inc.*, 206 F.R.D. 663, 676 (E.D. Wash. 2001).  This finding

22  will resolve the issue for the entire class. *Id.*; *see also Clark*, 204 F.R.D. at 664 (finding the

23  "common legal questions are also straightforward," namely whether the debt collector's

24  practices violated the FDCPA and CAA); *Hansen*, 213 F.R.D. at 415 (finding common

25  questions relating to FDCPA, CAA and CPA claims where debt collector sent form letter

26  seeking to collect more than the underlying debt).

27

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 12

# IV.  ARGUMENT AND AUTHORITY

## A.    Plaintiffs Satisfy the Class Certification Requirements Under Rule 23(a)

The four prerequisites to class certification are numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S. Ct. 2541, 2551 (2011).  In addition, one of the three conditions of Rule 23(b) must be met.  Fed. R. Civ. P. 23(b); *see also Dukes*, 131 S. Ct. at 2551.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires a finding that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Zeisel v. Diamond Foods, Inc*., No. C 10-01192 JSW, 2011 WL 2221113, *10 (N.D. Cal. June 7, 2011) (citations omitted).  "Although certification inquiries such as commonality, typicality, and predominance might properly call for some substantive inquiry, '[t]he court may not go so far … as to judge the validity of [the plaintiffs'] claims.'" *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union AFL-CIO, CLC v. Conoco Phillips Co*., 593 F.3d 802, 808–09 (9th Cir. 2010) (internal marks omitted; *quoting Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).  Ultimately, the district court has broad discretion to certify a class.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

As demonstrated below, Plaintiffs satisfy all the requirements of Rule 23(a) and (b)(3), and certification of the proposed Class is appropriate.  Indeed, Congress expressly recognized the propriety of class actions to enforce the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA class actions.[2]  In addition, courts

---

2  Title 15 U.S.C. § 1692k(a)(2)(B) provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--

(B)        in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  have repeatedly certified FDCPA classes where, as here, the FDCPA violations are based on

2  standardized conduct.  *See, e.g., Irwin*, 96 F.Supp.2d 968 (mass mailings of computer-

3  generated letters demanding check fees and threatening to sue the check writer); *Ballard*, 186

4  F.R.D. 589 (mass mailings of over one million computer-generated letters demanding check

5  fees); *Hansen*, 213 F.R.D. 412.

6        1.     Plaintiffs Satisfy the Numerosity Requirement

7        A class must be "so numerous that joinder of all members is impracticable."  Fed. R.

8  Civ. P. 23(a)(1).  "Often, the number of class members by itself is sufficient to establish the

9  impracticability of joining them as plaintiffs."  *Kirkpatrick v. Ironwood Communications, Inc.*,

10  Case No. c05-1428JLR, 2006 WL 2381797 at *3 (W.D. Wash. Aug. 16, 2006) (citing *Jordan v.

11  County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds by* 459

12  U.S. 810 (1982)).  Numerosity has been held presumptively satisfied when a proposed class

13  comprises forty or more members.  *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock

14  Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash. 2010); *see also Amone v.

15  Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005) ("[I]n light of prevailing precedent, the difficulty

16  inherent in joining as few as 40 class members should raise a presumption that joinder is

17  impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule

18  23(a)(1) on that fact alone.").  "In addition to the number of potential class members, the Court

19  may consider 'the geographic diversity of class members, [and] the ability of individual

20  claimants to institute separate suits....'"  *Gonzalez v. U.S. Dept. of Homeland Sec.*, 239 F.R.D.

21

22

---

23       class members, without regard to a minimum individual recovery, not to exceed the lesser of
         $500,000 or 1 per centum of the net worth of the debt collector; and

24       Title 15 U.S.C. § 1692k(b)(2) provides:

25  (b) In determining the amount of liability in any action under subsection (a), the court shall consider,
    among other relevant factors--

26       (2)     in any class action under subsection (a)(2)(B) of this section, the frequency and
                 persistence of noncompliance by the debt collector, the nature of such noncompliance, the
27               resources of the debt collector, the number of persons adversely affected, and the extent to
                 which the debt collector's noncompliance was intentional.

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 14

1    620, 628 (W.D. Wash. 2006), *vacated on other grounds*, 508 F.3d 1227 (9th Cir. 2007)**Error!**

2    **Bookmark not defined.**.

3          The proposed class here easily meets the numerosity requirement.  AllianceOne has

4    produced 2,043 form NODs that it mailed during one year of entire class period in connection

5    with checks written to just one of the clients for which it collects dishonored checks.  *See*

6    Leonard Decl. ¶ 4.  Further, Defendant has admitted that it sent the exact same form letters in

7    connection with collection efforts for checks written to entities other than the DOL to

8    thousands more putative class members.  *Id.*, Ex. E – F.  That number is sufficient to make

9    joinder impractical.  The Class members are dispersed throughout Washington State and are

10   unlikely to have the resources to sue individually.  *Id.*  For these reasons, Plaintiffs satisfy the

11   numerosity requirement.

12          2.      There Are Numerous Common Questions of Law and Fact

13          Rule 23(a)(2) requires that common question of law or fact exist among class members.

14   To satisfy this element, the "[p]laintiff must allege a 'common contention of such a nature that

15   it is capable of class-wide resolution—which means that determination of its truth or falsity

16   will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *In*

17   *re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting

18   *Dukes*, 131 S. Ct. at 2551).  In other words, "[w]hat matters to class certification is not the

19   raising of common 'questions' but, rather the capacity of a classwide proceeding to generate

20   common answers apt to drive the resolution of the litigation."  *Id.*  (internal marks and citation

21   omitted).  It is not necessary that members of the proposed class "share every fact in common

22   or completely identical legal issues."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009).

23   To the contrary, "[t]o satisfy the commonality element, it is enough for plaintiffs to present just

24   one common claim."  *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 903 (7th Cir. 2012) (citing

25   *Dukes*, 131 S.Ct. at 2556).  Moreover, the "existence of shared legal issues with divergent

26   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

27   remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988).

     The Ninth Circuit construes commonality liberally.  *Id.*

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 15

In FDCPA actions, common questions of law and fact arise "where… the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters." *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)); *see also, Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (common questions of law and fact where defendant sent out form letters containing the same allegedly unlawful fee demands).

Here, Defendant does not dispute that its uniform practice when collecting dishonored checks in Washington is to send its NOD and NTC form as its initial communication to Plaintiffs and putative class members.  AllianceOne's NOD form, in particular, gives rise to common questions of law, which will determine liability and damages.  These include, but are not limited to:

- Does the threat of criminal charges violate the FDCPA or the CPA;

- Did Defendant violate the Washington CAA by sending out an NOD that misstated the time period in which a check writer had to make payment to avoid criminal liability;

- If Defendant violated the CAA, did it forfeit its right to collect anything more than the face amount of the dishonored check it sought to collect;

- Is Defendant's violation of the CAA also a violation of the CPA;

- Did Defendant violate 15 U.S.C. § 1692g(a) because its threat of criminal charges stood in threatening contradiction of the notification that the check writer had thirty days from receipt of the notice to dispute the debt;

- Are Plaintiffs and class members entitled to statutory damages under the FDCPA, 15 U.S.C. § 1692k, and if so, in what amount; and

- Are class members entitled to damages under the CPA, and if so, in what amount?

Due to the numerous common questions of law and fact among the proposed class, the commonality requirement is satisfied.

3.    The Named Plaintiffs' Claims Are Typical of the Class Claims

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "The purpose of the typicality

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quotation and marks omitted); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (same). "The Ninth Circuit does not require the named plaintiff's injuries to be identical with those of the other class members, but only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same injurious course of conduct." *Hanon*, 976 F.2d at 666 (quotation and internal marks omitted).

Plaintiffs' claims are typical of the claims of other class members because they arise from the same conduct of Defendant—namely sending the same form letters to Plaintiffs and class members. *See* Leonard Decl., Ex. E at 48:6 – 50:16, 51:24 – 53:11; Ex. F; Exs. G, I – L. Thus, Plaintiffs' claims and the class claims all arise from the same conduct, which Plaintiffs allege violates various provisions of the FDCPA and Washington law, and results in the same common injury to Plaintiffs and class members. *See* Section III.B, C, *supra*. The typicality element is satisfied.

      4.    <u>The Named Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class</u>

Before certifying the class, the Court must find the named Plaintiffs and their counsel will adequately represent the Class. Fed. R. Civ. P. 23(a)(4) & (g)(1). This inquiry requires the Court to determine that there are no antagonistic or conflicting interests between the named Plaintiffs and the absent class members and that the named Plaintiffs and their counsel will vigorously prosecute the action on behalf of the Class. *Hansen,* 213 F.R.D. at 415. With respect to the adequacy of counsel, the Court considers the work counsel have done to investigate the claims of the proposed Class, counsel's experience in handling complex cases

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  and litigating FDCPA class actions, counsel's knowledge of applicable law, and the resources
2  counsel will commit to representing the Class.  Fed. R. Civ. P. 23(g)(1)(C).

3        The named Plaintiffs' claims against AllianceOne are coextensive with, and not
4  antagonistic to, the claims asserted on behalf of the Class.  There is no conflict between the
5  interests of the Plaintiffs and the class they seek to represent.  The named Plaintiffs are
6  committed to prosecuting this action vigorously on behalf of the Class and have agreed to
7  participate fully in the litigation.  *See* Leonard Decl. ¶ 23.

8        In addition, Plaintiffs have retained competent and capable trial lawyers with significant
9  experience in complex litigation, including consumer class actions.  *See* Leonard Decl. ¶ 2;
10  Terrell Decl. ¶¶ 2 – 10; Arons Decl. ¶¶ 2 – 5; Leen Decl. ¶¶ 2 – 8.  The attorneys representing
11  Plaintiffs have been appointed class counsel in several class actions against debt collection
12  entities and in cases involving the same laws at issue here.  *See, e.g.*, Arons Decl. ¶ 5; Terrell
13  Decl. ¶¶ 3 – 4.  They have successfully litigated on behalf of hundreds of thousands of
14  consumers.  *See* Leonard Decl. ¶ 2; Terrell Decl. ¶¶ 2 – 10; Arons Decl. ¶¶ 2 – 5; Leen Decl. ¶¶
15  2 – 8.  In this case, Plaintiffs' counsel are dedicated to prosecuting the claims of the Class, and
16  have the resources to do so.  *Id.*  Accordingly, the adequacy requirement is satisfied.

17  **B.    Plaintiffs Meet the Requirements for Certification Under Rule 23(b)(3)**

18        In addition to meeting the requirements of Rule 23(a), a class action must also satisfy
19  the requirements of one of the subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(b).  Certification
20  is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the
21  class predominate over any questions affecting only individual members, and… a class action
22  is superior to other available methods for the fair and efficient adjudication of the controversy."
23  Fed. R. Civ. P. 23(b)(3).

24        The United States Supreme Court acknowledges that Rule 23 procedures may be the
25  only viable means for claimants with small recoveries to have access to the courts.  *Deposit*
26  *Guaranty National Bank v. Roper*, 445 U.S. 326, 338, n.9, 100 S.Ct. 1166, 63 L. Ed. 2d 427
27  (1980); *see also*, *Hanlon,* 150 F.3d at 1023.  Courts recognize that class actions to enforce
compliance with consumer protection laws are "desirable and should be encouraged." *See*

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 18

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1    *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D. Az. 1982).  As the court noted in

2    *Ballard*, 186 F.R.D. at 600, when granting class certification where defendant's $20.00 check

3    collection fee was at issue, "the size of any individual damages claims under the FDCPA are

4    usually so small that there is little incentive to sue individually."  The same is true here.

5    Without the class action procedure there would be little incentive for defendants to conform

6    their conduct to the law.

7              1.     Common Factual and Legal Questions Concerning Defendant's Notice of
                      Dishonor Form Letters Predominate Over Any Individual Damages Issues

8
9             The predominance inquiry concerns whether a proposed class is sufficiently cohesive to

10   warrant adjudication by representation.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623,

11   117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997).  Common issues "predominate" where a common

12   nucleus of facts and potential legal remedies dominate the litigation.  *See Chamberlan v. Ford

13   Motor Co*., 402 F.3d 952, 962 (9th Cir. 2005); *see also Jiminez v. Allstate Ins. Co*., 765 F.3d

14   1161, 1165 & n.4 (9th Cir. 2014) (holding certification appropriate where common factual and

15   legal issues lie "at the core of the purported class' claims").  "The importance of the class

16   action device in vindicating the rights of consumers is one reason why the Supreme Court held

17   that '[p]redominance is a test readily met in certain cases alleging consumer . . . fraud,' among

18   others." *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 760 (7th Cir. 2014) (quoting *Amchem

19   Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)); *see also Mortimore v. FDIC*, 197 F.R.D.

20   432, 438 (W.D. Wash. 2000) (certifying CPA claims and noting predominance requirement is

21   readily met in consumer cases).  The focus of this case is on AllianceOne's unfair and

22   deceptive NOD form letters, which raise several questions that are common to the Class and

23   that predominate over any questions affecting only individual members, making certification

24   under Rule 23(b)(3) appropriate for each of Plaintiffs' claims.

25              a.     *The Washington Statutory Claims*

26            Plaintiffs allege the NODs AllianceOne sent to Washington consumers do not conform

27   to the form set forth in RCW 62A.3-540.  Plaintiffs further allege that, as a result of its

     defective NOD, AllianceOne is not entitled to collect anything over the face amount of the

check.  *See* RCW 62A.3-540.  Whether AllianceOne's NOD violates the Washington statutory scheme and whether AllianceOne is entitled to collect fees over the face amount of the check are common questions that can be answered once for the class as a whole.

> b.  *The FDCPA Claims*

In FDCPA actions, a common nucleus of operative fact is typically found where "defendants have engaged in standardized conduct toward members of the proposed class by mailing to them allegedly illegal form letters or documents."  *Keele*, 149 F.3d at 594-95.  The legal issues arising from Defendant's NOD and NTC form letters are the same for all class members.  *See Ballard*, 186 F.R.D. at 595; *Hunt*, 241 F.R.D. at 514.  Plaintiffs allege the language in AllianceOne's letters threatening criminal prosecution violate 15 U.S.C. §§ 1692e(4) and 1692e(7), and that given these violations, AllianceOne is not entitled to collect anything over the face amount of the check pursuant to 15 U.S.C. § 1692f(1).  Whether the language in AllianceOne's NODs threatening criminal prosecution violates these provisions of the FDCPA and thereby precludes AllianceOne from collecting "any interest, fee, charge, or expense incidental to the principal obligation" are the common predominating questions with respect to these claims.  15 U.S.C. § 1692f(1).

Common questions also predominate regarding Plaintiffs' claim that the validation notice in AllianceOne's standardized NTC violates the FDCPA because the NOD's threat of criminal charges if payment was not made within thirty days overshadows the check writer's right to dispute the debt.  *See Swanson*, 869 F.2d at 1225 ("[T]o be effective, the [validation] notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency.").  Because these common questions focus on the legality of Defendant's form letters, they necessarily predominate over any individual issues, of which there are none.

> c.  *The CPA Claims*

Plaintiffs allege Defendant's form letters violate the CAA, which is a per se violation of the CPA.  In addition, Plaintiffs allege Defendant's NOD and NTC forms are unfair and

*TERRELL MARSHALL LAW GROUP PLLC*
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

deceptive because they (1) threaten Washington consumers with criminal prosecution; (2) do not include an effective validation notice; and (3) seek to collect fees to which AllianceOne is not entitled.  With respect to each of these common practices, the question of whether AllianceOne's conduct is unfair or deceptive will be the same for all class members.  Likewise, whether AllianceOne's common practice was unethical, unscrupulous, or unjust will be answered once for the entire class.

This case is particularly well suited for class certification because it involves common legal questions regarding the lawfulness of AllianceOne's form letters.  Plaintiffs allege Defendant's form letters affected each class member in the same manner.  As another federal court concluded in a similar class action, predominance is satisfied when a class challenges a uniform policy or practice because the validity of that policy or practice tends to be the predominant issue in the litigation.  *See Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 443-444 (N.D. Ill. 2008) (predominance requirement satisfied in action alleging defendant's communications with debtors were false and misleading in violation of the FDCPA, finding the "same legal issue would need to be decided with respect to each class member").

The same is true here.  The central focus of this litigation will be the legality of Defendant's form letters which it has sent to thousands of Washington debtors.  *See* Leonard Decl. ¶ 7, Ex. G.  The amount of overcharges paid by each class member may readily be calculated from Defendant's computerized records, but the fact that these damages vary does not preclude certification.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 479 (E.D. Wash. 1996).  "Indeed, class actions have been certified under the FDCPA where the plaintiff class seeks actual damages."  *Connor*, 202 F.R.D. at 271 (citing cases).  Because common issues predominate over any individualized issues, the predominance requirement is satisfied.

2.    Plaintiffs Satisfy the Superiority Requirement

The Court should certify the class if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  "A class action may be superior if class litigation of common issues will reduce

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

litigation costs and promote greater efficiency, or if no realistic alternative exists." *Connor*, 202 F.R.D. at 271.  A court must, in terms of fairness and efficiency, balance the merits of a class action against those of available alternative methods of adjudication.  *See id.*  For instance, a class action is appropriate if duplicative lawsuits with potentially inconsistent results would be avoided.  *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000).

In a case involving allegations similar to Plaintiffs' allegations in this case, the court found that a class action was the superior means by which to decide whether the demands in a debt collector's form collection letters violated the FDCPA, noting:

> First, individual consumers are most likely unaware of their rights under the FDCPA.  Class action certifications to enforce compliance with consumer protection laws are "desirable and should be encouraged."  Second, the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually. Third, efficiency and consistency of concerns favor litigating the legality of . . .[the debt collector's] standardized conduct by all class members in one suit, rather than forcing each class member to sue individually.

*Ballard*, 186 F.R.D. at 600 (citations omitted); *see also Hansen*, 213 F.R.D at 416-17  (the cumbersome nature of individual litigation and the comparatively minimal damages recoverable under the FDCPA make it likely that class members will have little interest in bringing their own action); *Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006) (granting class certification in FDCPA case against check collector "to allow the vindication of the rights of groups of people who individually would be without effect[ive] strength to bring their opponents into court").

Given the large number of class members and the multitude of common issues present, the use of the class device is the most efficient and fair means of adjudicating the claims that arise out of AllianceOne's standardized NOD form letters.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources and promotes consistency and efficiency of adjudication.  Additionally, it is likely that most class

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1  members lack the resources necessary to seek individual legal redress for AllianceOne's

2  misconduct and, without class treatment, would have no effective remedy for their injuries.  *See*

3  *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 571 (W.D. Wash. 2012); *see also Haynes v. Logan*

4  *Furniture Mart. Inc*., 503 F.2d 1161, 1165 (7th Cir. 1974) (in deciding the "best" available

5  method, a court may properly consider the "inability of the poor or uninformed to enforce their

6  rights, and the improbability that large numbers of class members would possess the initiative

7  to litigate individually.").  For these reasons, the superiority requirement is met.

8         3.    <u>This Case Presents No Particular Management Difficulties</u>

9        One of the elements that courts use to determine the superiority of a class action in a

10  particular case is manageability.  Fed. R. Civ. P. 23(b)(3).  Courts, including those in

11  Washington, routinely find that class actions involving FDCPA violations are manageable.

12  *See, e.g., Hansen*, 213 F.R.D. at 417 ("Litigating the potential thousands of [FDCPA] claims is

13  manageable.") (citing *Connor*, 202 F.R.D. at 271 (finding no management difficulties where

14  plaintiffs alleged collection letters violated the FDCPA)); *Clark*, 204 F.R.D. at 666 (finding no

15  management difficulties and certifying FDCPA class).

16        Plaintiffs' claims can be proven with common evidence taken from or based on

17  AllianceOne's own records and the testimony of similarly situated class members.  *See Connor*,

18  202 F.R.D.at 271 (finding any individualized issues "regarding when and whether [defendant]

19  sent letters to members of the class… can be answered by conducting a ministerial review of

20  [defendant's] records"); *Hansen*, 213 F.R.D. at 417 (same).  All a named plaintiff needs to

21  establish is that the defendant engaged in a "pattern or practice" of conduct, "whether those

22  practices violated the law, and whether the [defendant] has any defense[.]"  *Clark*, 204 F.R.D.

23  at 666.

24        Here, AllianceOne uses a sophisticated collection operation in which, in connection

25  with its outside vendors, it inputs check data, directs a vendor to print and mail the form letters,

26  and receives and maintains copies of all notices that were sent.  *See* Leonard Decl., Ex. F

27  (Interrogatory Answers Nos. 5 and 7); Ex. E at 51:24 – 58:16 (testifying the computer system

indicates that both the NOD and NTC were sent to a particular consumer and the date on which

they were sent).  This is commonly known as the CUBS system.  *Id.* at 15:17 – 16:22.  In addition to tracking the letters sent to Washington consumers, it also tracks, among other things, all payments made for all accounts, for the entire class period.  *See, e.g.,* Leonard Decl., Exs. R, U – W.  Thus, there should be little difficulty in retrieving the computerized data needed to identify class members and calculate damages.  Defendant operates a computer-driven collection business and its CUBS database should contain all the information needed to fully litigate liability and damages.

### 4.  Constitutionally Sound Notice Can Be Provided to Class Members

To protect the rights of absent Class members, the Court must provide them with the best notice practicable when it certifies a class under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2). The best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

AllianceOne maintains electronic records of the debtors to whom it has sent its NOD and NTC form letters in the state of Washington during the Class period, including each person's last known phone number and mailing address.  As a result, postcard notice can be sent directly via First Class mail to all Class members, directing them to a website maintained and updated by Plaintiffs' attorneys that will contain all pertinent case information.  Class members will be able to use the site to stay apprised of important dates and to access the notice form and other key documents.  If certification is granted, Plaintiffs will submit a detailed notice plan and form to the Court.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court certify the proposed Class and Sub-Classes pursuant to Rule 23, appoint Plaintiffs Dibb, Ovist, Mason and Gondos as Class representatives, appoint Leen & O'Sullivan, PLLC, Sam Leonard, the Law Office of Paul Arons, and the Terrell Marshall Law Group PLLC as Class counsel, and approve mailing of notice to the Class.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

1             RESPECTFULLY SUBMITTED AND DATED this 12th day of October, 2015.

2                              TERRELL MARSHALL LAW GROUP PLLC

3

4                      By:   /s/ Beth E. Terrell, WSBA #26759
                           Beth E. Terrell, WSBA #26759

5                            Email:  bterrell@terrellmarshall.com
                           Erika L. Nusser, WSBA #40854

6                            Email:  enusser@terrellmarshall.com

7                            936 North 34th Street, Suite 300
                           Seattle, Washington  98103-8869

8                            Telephone:  (206) 816-6603
                           Facsimile:  (206) 350-3528

9

10                            Kathleen Box, WSBA #45254
                           Email:  katy@leenandosullivan.com

11                            LEEN & O'SULLIVAN PLLC
                           520 East Denny Way

12                            Seattle, Washington  98122
                           Telephone:  (206) 325-6022

13

14                            Sam Leonard, WSBA #46498
                           Email:  consumerlawyer@outlook.com

15                            ANTOINETTE M. DAVIS LAW, PLLC
                           528 Third Avenue West, Suite 102

16                            Seattle Washington 98119
                           Telephone:  (206) 486-1011

17                            Facsimile:    (206) 905-5910

18

                           Paul Arons, WSBA #47599

19                            Email:  lopa@rockisland.com
                           LAW OFFICE OF PAUL ARONS

20                            685 Spring Street
                           Friday Harbor, Washington  98250

21                            Telephone:  (360) 378-6496
                           Facsimile:  (360) 378-6498

22

23                            *Attorneys for Plaintiffs*

24

25

26

27

PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION - 25

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on October 12, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Jeffrey E. Bilanko, WSBA #38829
> Email:  jbilanko@gordonrees.com
> Elizabeth K. Morrison, WSBA #43042
> Email:  emorrison@gordonrees.com
> GORDON & REES LLP
> 701 Fifth Avenue, Suite 2100
> Seattle, Washington  98104
> Telephone:  (206) 695-5100
> Facsimile: (206) 689-2822
>
> *Attorneys for Defendant*

DATED this 12th day of October, 2015.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:   /s/ Beth E. Terrell, WSBA #26759
> Beth E. Terrell, WSBA #26759
> Email: bterrell@terrellmarshall.com
> 936 North 34th Street, Suite 300
> Seattle, Washington  98103
> Telephone:  (206) 816-6603
> Facsimile:  (206) 350-3528
>
> *Attorneys for Plaintiffs*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.350.3528
www.terrellmarshall.com