THE HONORABLE ROBERT J. BRYAN

1
2
3
4
5
6
7

U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8
9
10

MARGARET DIBB, SHANUA OVIST,
SAMANTHA MASON, and WENDY
GONDOS on behalf of herself and on behalf of
others similarly situated,

11                    Plaintiffs,

12          vs.

13

ALLIANCEONE RECEIVABLES
14   MANAGEMENT, INC.,

15                    Defendant.

16

NO. 3:14-CV-05835-RJB

**REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

17
18
19
20
21
22
23
24
25
26
27

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION
CASE NO. 3:14-CV-05835-RJB

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  AUTHORITY AND ARGUMENT ............................................................ 2

    A.   Members of the Class Can Be Easily Identified ............................... 2

        1.   Umbrella Class and CPA Sub-Class ...................................... 3

        2.   FDCPA Sub-Class .................................................................. 3

    B.   Typicality Is Satisfied ....................................................................... 5

        1.   Plaintiffs' FDCPA Sub-Class Satisfies the
            Typicality Requirement ......................................................... 5

        2.   Plaintiff Dibb Satisfies the Typicality Requirement ............. 6

    C.   Commonality Is Satisfied .................................................................. 7

    D.   Adequacy Is Satisfied ....................................................................... 8

    E.   Predominance Is Satisfied ............................................................... 10

    F.   The Merits of Plaintiffs' Claims Can Be Decided On a
        Class-Wide Basis ............................................................................ 12

III. CONCLUSION ........................................................................................ 12

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

# TABLE OF AUTHORITIES

Page

2

## FEDERAL CASES

3

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ................................................................................. 8

*Ballard v. Equifax Check Servs.*,
    186 F.R.D. 589 (E.D. Cal. 1999) ............................................................... 11

*Clark v. Bonded Adjustment Co.*,
    204 F.R.D. 662 (E.D. Wash. 2002) ............................................................. 8

*Erica P. John Fund, Inc. v. Halliburton*,
    131 S. Ct. 2179 (2011) ............................................................................. 10

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ............................................................... 4, 5

*Gold v. Midland Credit Mgmt., Inc.*,
    306 F.R.D. 623 (N.D. Cal. 2014) ............................................................... 4

*Gradisher v. Check Enforcement Unit, Inc.*,
    203 F.R.D. 271 (W.D. Mich. 2001) ........................................................ 11

*Gonzales v. Arrow Fin. Servs., LLC*,
    660 F.3d 1055 (9th Cir. 2011) ................................................................... 4

*Hansen v. Ticket Track, Inc.*,
    213 F.R.D. 412 (W.D. Wash. 2003) .......................................................... 8

*Jenkins v. Pech*,
    Case No. 8:14CV41, 2015 WL 3658261 (D. Neb. June 12, 2015) ............... 4

*Karnette v. Wolpoff & Abramson, LLP*,
    Case No. 3:06-CV-44, 2007 WL 922288 (E.D. Va. Mar. 23, 2007) ........... 11

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................................... 2, 3

*Pryor v. Aerotek Scientific, LLC*,
    278 F.R.D. 516 (C.D. Cal. 2011) ........................................................... 2, 3

*Santoro v. Aargon Agency, Inc.*,
    252 F.R.D. 675 (D. Nev. 2008) ............................................................... 10

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Selburg v. Virtuoso Sourcing Grp., LLC*,
    No. 1:11–CV–1458–RLY–MJD, 2012 WL 4514152 (S.D. Ind. Sept. 29, 2012) .......... 4

*Steinberg v. Nationwide Alut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) .................................................................................. 6

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ................................................................................. 7, 8

*Tourgeman v. Collins Fin. Servs., Inc.*,
    755 F.3d 1109 (9th Cir. 2014) .............................................................................. 7, 10

*Vincent v. Money Store*,
    304 F.R.D. 446 (S.D.N.Y. 2015) .............................................................................. 3

*Wilborn v. Dun & Bradstreet Corp.*,
    180 F.R.D. 347 (N.D. Ill. 1998) .......................................................................... 10, 11

*Wolph v. Acer Am. Corp.*,
    Case No. C 09-01314 JSW, 2012 WL 993531 (N.D. Cal. March 23, 2012) ................ 2

*Xavier v. Phillip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011).................................................................... 2

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................... 7

**STATE CASES**

*Nordstrom, Inc. v. Tampourlos*,
    107 Wn.2d 735, 733 P.2d 208 (1987) .................................................................. 7, 8

**STATE STATUTES**

RCW 62A.3-540............................................................................................................ 12

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................... 2, 5, 7, 12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## I.  REPLY INTRODUCTION

2

3      The question before this Court is a simple one: can the Court determine the legality

4 AllianceOne's standardized Notice of Dishonor of Check (NOD) form and the legality of its

5 collection of fees using common proof?  Determining whether AllianceOne's form NOD and

6 check collection practices comply with the Fair Debt Collection Practices Act (FDCPA), the

7 Washington Consumer Protection Act (CPA), and the Washington Collection Agency Act

8 (CAA) calls for an objective inquiry into AllianceOne's admittedly standard conduct.  There

are no individual issues relevant to that inquiry.

9      AllianceOne wrongly argues that minor individual differences in the debts incurred by

10 each Plaintiff, and in the experiences of Plaintiff Dibb and Ovist, in particular, preclude class

11 certification.  First, the underlying debt has no relevance to the fairness of AllianceOne's

12 collection procedures.  The underlying debt is relevant only to determining membership in

13 Plaintiffs' FDCPA Sub-Class which is made up exclusively of persons who wrote checks to the

14 Department of Licensing (DOL).  This determination will not be difficult since Defendant's

15 collection of dishonored checks written to the DOL is limited to checks written for just three

16 categories of transactions.  AllianceOne's argument regarding the differences in the debts

17 incurred is based on a misrepresentation to the Court that it collects on dishonored checks that

18 were written to the DOL for "over 450 different licenses."  *See* Dkt. No. 124 at 11:7-20; Dkt.

19 No. 94 at ¶ 9, Ex. G.  In truth, AllianceOne only collects on dishonored checks that were

20 written to the DOL for driver and vehicle licenses, and for accounts receivables; not for "over

21 450 different licenses."  *See* Declaration of Denelle Baker (Baker Decl.) ¶ 2.  "[A]ll unpaid fees

22 from Business Licensing are sent to… another collection agency, for collection."  *Id.*  Thus,

23 despite AllianceOne's affirmative misrepresentations to the contrary, there will be no need for

24 the Court to individually examine the debt for "over 450 different licenses" to determine if it is

25 a consumer debt within the meaning of the FDCPA.

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Second, AllianceOne challenges Plaintiffs Dibb and Ovist's typicality, commonality, and adequacy, and the "integrity and ethical attributes" of two of the firms representing all four Plaintiffs in this matter.  These attacks are not supported by the facts, but are instead baseless and abusive attacks meant to distract from the fact that AllianceOne has used the same form NOD letter in the same way to collect the same fees from thousands of Washington consumers.  As even AllianceOne highlights in its response, common legal issues regarding its form NOD letter lie at the core of this case.  Plaintiffs' motion for class certification should be granted.

## II.  AUTHORITY AND ARGUMENT[1]

### A.    Members of the Class Can Be Easily Identified

Ascertainability is not an express requirement of Rule 23.  *See Wolph v. Acer Am. Corp.*, Case No. C 09-01314 JSW, 2012, WL 993531, *1 (N.D. Cal. March 23, 2012) (citing cases).  While the class must be defined clearly, the purported "ascertainability" inquiry is narrow and only requires the plaintiff to establish that an identifiable class exists.  *Id.*  That is, in order for a proposed class to satisfy the "ascertainability requirement," "membership must be determinable from objective, rather than subjective, criteria."  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) (quoting *Xavier v. Phillip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)).  "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'"  *Pryor v. Aerotek Scientific, LLC,* 278 F.R.D. 516, 523 (C.D. Cal. 2011) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)).  Likewise, a proposed class is sufficiently defined if it describes "a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having

---

[1] AllianceOne's motion to strike should be denied. Mr. Leonard represents the Plaintiffs in this action and has personal knowledge regarding their commitment to the case. *See* Dkt. No. 104 at ¶¶ 1, 2, 19, 24. Mr. Leonard quite obviously has direct knowledge regarding Plaintiffs' commitment to this case since he, as well as all Plaintiffs' counsel, have worked with Plaintiffs to obtain their responses to AllianceOne's discovery requests and in light of his knowledge regarding Plaintiffs' depositions. *Id.*; *see also, e.g.,* Dkt. No. 94, Exs. A and C. Mr. Leonard's statement is not hearsay.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 2
CASE NO. 3:14-CV-05835-RJB

1   a right to recover based on the description." *Kristensen*, 12 F. Supp. 3d at 1303.  Here, the

2   class definitions satisfy these requirements.

3         1.    Umbrella Class and CPA Sub-Class

4         Plaintiffs respectfully request the Court certify the Umbrella Class and CPA Sub-Class

5   as defined.  *See* Dkt. No. 100 at 1:14-22.  These definitions are proper because they are based

6   on "objective criteria."  *See Pryor, LLC*, 278 F.R.D. at 523 (finding class ascertainable where

7   the parameters for membership were objective criteria and members were ascertainable through

8   business records).  An individual is a member of the class if AllianceOne sent the individual its

9   form NOD.

10         AllianceOne argues that Plaintiffs' proposed class definitions are "vague" because they

11   do not "sufficiently identify the language that allegedly violates the FDCPA or what language

12   must be included in the letter in order to make the recipient a member of the class."  Dkt. No.

13   124 at 9:9-14.  Defendant's arguments fail.  First, identification of the language in

14   AllianceOne's form NOD that violates the FDCPA is a merits determination.  Second, there is

15   no need to identify what language must be included in the letter in order to make the recipient a

16   member of the class.  Membership in the class can be determined by a ministerial review of

17   AllianceOne's records to determine to whom it sent its form NOD.  *See Vincent v. Money*

18   *Store*, 304 F.R.D. 446, 460 (S.D.N.Y. 2015) (finding FDCPA class sufficiently ascertainable

19   where membership could be determined "by reference to objective criteria, such as the

20   borrowers to whom [] letters were sent").  Third, AllianceOne admits it sent the same form

21   NOD to every class member.  *See* Dkt. No. 104, Ex. F (supplemental response to Interrogatory

22   No. 19); Exs. G – H; Ex. E at 48:6 – 50:16, 51:24 – 53:11.  The class is easily identifiable.

23         2.    FDCPA Sub-Class

24         AllianceOne argues that Plaintiffs' FDCPA Sub-Class is not ascertainable because the

25   court will have to "determine whether the debt was incurred for personal, household or family

26   purposes."  Dkt. No. 124 at 10:1-10.  AllianceOne does not cite a single case in support of this

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

argument.  To the contrary, in the context of the FDCPA, courts analyzing the "ascertainability requirement" must be mindful that the Act is a "broad remedial statute," *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1060 (9th Cir. 2011), and that certifying a class "will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1031–32 (9th Cir. 2012).  "As such, certifying a reasonably ascertainable FDCPA class for purely statutory damages will serve the purposes of the Act, which is targeted at debt collector activities." *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 629 (N.D. Cal. 2014).  Thus, numerous federal courts throughout the country have rejected the same unsupported argument AllianceOne makes here and certified consumer class action cases under the FDCPA, concluding such classes are ascertainable even where the defendant does not keep records that show the reason for which the unpaid obligation was incurred, *Gold*, 306 F.R.D. at 628, and even where the plaintiff and potential class members cannot recall the purpose of all debts, *Jenkins v. Pech*, Case No. 8:14CV41, 2015 WL 3658261, *12 (D. Neb. June 12, 2015).

The *Gold* court reasoned "acceptance of Defendants' arguments would effectively eliminate class action litigation under the FDCPA because in all cases, separating out the business debt from the consumer debt would pose a bar to class certification."  2014 WL 5026270, at *3-5; *see also Selburg v. Virtuoso Sourcing Grp., LLC,* No. 1:11–CV–1458–RLY–MJD, 2012 WL 4514152, at *3 (S.D. Ind. Sept. 29, 2012) ("[T]he need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action.  If that need alone precluded certification, there would be no class actions under the FDCPA.").  As in *Gold* and *Jenkins*, Plaintiffs will first begin with identifying class members using Defendant's records and, if further identification is needed, Plaintiffs can identify class members through use of a court-approved notice and claim form.  The FDCPA Sub-Class is properly defined.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**B.      Typicality Is Satisfied**

2

3           Plaintiffs' claims are typical of those of the members of the proposed class.  *See* Fed. R.

4      Civ. P. 23(a)(3).  Plaintiffs and members of the class were injured by the same course of

5      conduct, namely AllianceOne's unlawful form NODs.  *See Evon*, 688 F.3d at 1030.  There is

       no difference between AllianceOne's collection activities targeting Plaintiffs and those

6      targeting the class.  *See* Dkt. No. 100 at 3:18 – 6:5, 16:26 – 17:18; Dkt. No. 104, Ex. E at 48:6 –

7      50:16, 51:24 – 53:1; Dkt. No. 126 at 2:10 – 10:2.  AllianceOne admits it sent every member of

8      the class the same NOD, regardless of the underlying debt.  *See* Dkt. No. 104, Ex. F

9      (supplemental response to Interrogatory No. 19); Exs. G – H; Ex. E at 48:6 – 50:16, 51:24 –

10     53:11.  Typicality is met.

11          1.      Plaintiffs' FDCPA Sub-Class Satisfies the Typicality Requirement

12          Plaintiffs' FDCPA Sub-Class is explicitly defined as limited to persons in the Umbrella

13     Class "whose check was written to the Washington Department of Licensing."  Despite

14     AllianceOne's misrepresentations to the contrary, it does not collect on dishonored checks

15     written to the DOL for "over 450 different licenses."  *See* Dkt. No. 124 at 11:7-20; Dkt. No. 94

16     at ¶ 9, Ex. G.  Rather, the DOL refers to AllianceOne for collection only "unpaid fees from

17     Drivers, Vehicles and Accounts Receivables."  Baker Decl. ¶ 2.

18          With respect to licensing fees for vehicles, the Court has already found that Plaintiff

19     Dibb entered into a consensual transaction and that her debt is covered under the FDCPA.  *See*

20     Dkt. No. 12 at 5:11 – 6:2.  The Court can easily make this same determination with respect to

21     the <u>two</u> other licensing transactions for which AllianceOne actually collects for the DOL.  *See*

22     Dkt. No. 126 at 14:3-20.  Thus, Plaintiffs' FDCPA Sub-Class is easily manageable given

23     AllianceOne's own records which identify the debt for which each class member wrote his or

24     her check to the DOL and given this Court's earlier ruling that licensing fees for vehicles are

25     covered under the FDCPA.

26

27

2.      <u>Plaintiff Dibb Satisfies the Typicality Requirement</u>

AllianceOne also challenges Plaintiff Dibb's typicality.  *See* Dkt. No. 124 at 10:18 – 11:6.  Defendant's arguments, however, are attempts to re-litigate legal issues that have already been decided.   Defendant lost the arguments that Plaintiff Dibb's debt was not a consumer transaction within the meaning of the FDCPA and that her claims are barred by the FDCPA's one-year statute of limitations on its earlier motions to dismiss and for summary judgment.  *See* Dkt. No. 9 (arguing Plaintiff Dibb's debt to register her vehicle "is not a consumer debt and falls outside the scope of the FDCPA's definition of 'debt'"); Dkt. No. 18 (arguing Plaintiff Dibb's FDCPA claim is time barred).

First, the Court determined in its Order on Motion to Dismiss that paying to register a vehicle is a consensual transaction that falls within the ambit of the FDCPA.  *See* Dkt. No. 12 at 5:11 – 6:5.  AllianceOne's argument that this is an appealable issue does not go to Plaintiff Dibb's typicality and has no bearing on class certification.  Indeed, the purported appealable issue cited by AllianceOne—whether vehicle registration is a consumer debt within the meaning of the FDCPA—is a class issue that can be decided once and for all for the entire class by this Court, and again by the Ninth Circuit should AllianceOne choose to pursue an appeal.

Second, this Court ruled in its Order on Summary Judgment that there is a genuine issue of fact regarding AllianceOne's purported statute of limitations defense to Plaintiff Dibb's FDCPA claim.  *See* Dkt. No. 36.  Moreover, individual statute of limitations defenses do not preclude certification.  *See* Dkt. No. 126 at 5:22 – 6:22 (citing cases).  Indeed, "[c]ourts have been nearly unanimous in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff, does not preclude certification of a class action so long as the necessary commonality and ... predominance are otherwise present."  *Steinberg v. Nationwide Alut. Ins. Co.,* 224 F.R.D. 67, 78 (E.D.N.Y. 2004).  Thus, Defendant's arguments that Dibb's FDCPA claim is atypical, is without merit.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Even if Plaintiff Dibb's FDCPA claim was atypical of the FDCPA Sub-Class (it is not),

2  AllianceOne has not challenged her typicality with respect to the Umbrella Class or the CPA

3  Sub-Class because it cannot.  Plaintiff Dibb is a perfect representative for the Umbrella Class

4  and the CPA Sub-Class, because AllianceOne admits it sent Plaintiff Dibb its form NOD letter

5  on September 25, 2012.  *See* Dkt. No. 19 at 3:4-5.[2]  That is within the timeframe of the

6  Umbrella Class, which encompasses all persons to whom AllianceOne sent an NOD after

7  October 20, 2010, which is the same timeframe for the CPA Sub-Class.  *See* Dkt. No. 100 at

8  1:14-23.  Moreover, the nature of Plaintiff Dibb's underlying debt is not an issue for the

9  Umbrella Class or the CPA Sub-Class, because the CPA is not limited to consensual consumer

10  transactions.  *See Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 38, 204 P.3d 885

11  (2009).  Thus, even were this Court to agree that there are unique defenses to Plaintiff Dibb's

12  FDCPA claim that bar her from being a class representative for the FDCPA Sub-Class (it

13  should not), Plaintiff Dibb's claims are typical of the Umbrella Class and the CPA Sub-Class.

14  **C.      Commonality Is Satisfied**

15    As set forth in Plaintiffs' Motion, there are numerous "questions of law or fact common

16  to the class."  *See* Fed. R. Civ. P. 23(a)(2). The central questions in this case, the answers to

17  which are "apt to drive the resolution of the litigation," focus entirely on AllianceOne's

18  conduct.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also Suchanek*

19  *v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice

20  by the same defendant gives rise to the same kind of claims from all class members, there is a

21  common question.").

22    The questions are whether AllianceOne's form NOD letters violate the FDCPA and

23  CPA.  Both statutes call for an objective inquiry. *See, e.g.*, *Tourgeman v. Collins Fin. Servs.,*

24  *Inc.*, 755 F.3d 1109, 1118 (9th Cir. 2014) (FDCPA requires objective inquiry); *Nordstrom, Inc.*

---

[2]  Plaintiffs dispute that the letter attached to the Collett declaration is a copy of the letter that was mailed to Plaintiff Dibb.  The version that AllianceOne's records reflect it sent to Plaintiff Dibb is attached to the Leonard Decl. (Dkt. No. 104) as Exhibit I.  In any case, Plaintiff Dibb did not learn that any letter had been sent, until AllianceOne served its state court motion for summary judgment in 2014.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 7
Case No. 3:14-CV-05835-RJB

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    *v. Tampourlos*, 107 Wn.2d 735, 740, 733 P.2d 208 (1987) (Washington CPA requires objective

2    inquiry).  The Court will be asked to look at AllianceOne's form letters and determine whether

3    or not they comply with the FDCPA, the Washington Collection Agency Act, and the CPA.

4    *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (holding that

5    because materiality in a securities fraud action is an objective question, it can be proved

6    through evidence common to the class); *see also Suchanek*, 764 F.3d at 757 (explaining that

7    whether a defendant's conduct was deceptive and violated consumer protection laws is an

8    objective and common question); *see also Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662

9    (E.D. Wash. 2002) (certifying class of Washingtonians sent unlawful collection letters).

10           AllianceOne's single challenge to commonality is to Plaintiffs' FDCPA Sub-Class,

11   arguing as it did in challenging typicality that the Court will have to make a determination that

12   each transaction is a consumer debt within the meaning of the FDCPA.  *See* Dkt. No. 124 at

13   12:1-13.  This argument fails here for the same reasons set forth above.  *See* Section II.B.2.

14   **D.    Adequacy Is Satisfied**

15           The adequacy inquiry requires the court to determine that there are no antagonistic or

16   conflicting interests between the named Plaintiffs and the absent class members and that the

17   named Plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.

18   *See Hansen v. Ticket Track, Inc.,* 213 F.R.D. 412, 415 (W.D. Wash. 2003).

19           AllianceOne attacks only Plaintiffs Dibb and Ovist as inadequate representatives by

20   misrepresenting their deposition testimony and implying that Plaintiffs' counsel suborned

21   perjury. These attacks are not supported by the facts.  Plaintiff Ovist did not testify at her

22   deposition "that she never told [AllianceOne] that she was represented by an attorney."  Dkt.

23   No. 124 at 13:15 – 14:4.  In the cited testimony Plaintiff Ovist responded "no" to the following

24   questions: "Did you pay it off because your attorneys told you to?" and "Do you recall having a

25   conversation with anyone at AllianceOne where you told them that you're paying that off

26   because your attorney told you to?"  *Id*. (citing Dkt. No. 94, Ex. A at 25:16-22).  This is not

27

1   inconsistent with AllianceOne's business records in which Plaintiff Ovist merely stated that her

2   attorneys told her she was allowed to talk to AllianceOne directly.  *See* Dkt. No. 95.  Plaintiff

3   Ovist also did not testify that "she shredded [documents] three months after speaking with her

4   attorneys."  Dkt. No. 124 at 14:5-7.  Plaintiff Ovist's actual testimony was that she *may* have

5   shredded documents, but that she was not sure.  *See* Dkt. No. 94, Ex. A at 91:2-6, 108:23 –

6   109:1.  She further testified that she did not have any letters or documents from AllianceOne

7   when she retained her attorneys.  *Id.*  Regardless, the issue is irrelevant since AllianceOne has

8   already produced copies of its form NOD sent to Plaintiff Ovist.

9        With respect to Plaintiff Dibb, AllianceOne once again makes the same argument this

10   Court rejected in its denial of AllianceOne's motion for summary judgment.  *See* Dkt. No 36 at

11   8:1-23.  AllianceOne rehashes its argument that Plaintiff Dibb knew on July 10, 2013 that

12   AllianceOne mailed her a correspondence related to her debt.  *Compare* Dkt. No. 18 at 7:11 –

13   8:3 (arguing Plaintiff Dibb knew about the existence of a letter on July 10, 2013), *with* Dkt. No.

14   124 at 14:13 – 15:17 (arguing the same).  AllianceOne's argument fails here for the same

15   reasons it was rejected by this Court at the summary judgment stage.  *See* Dkt. No. 36 at 8:1-23

16   (finding Plaintiff Dibb "asserted sufficient issues of fact to rebut the presumption that she

17   received the NOD letter.  That is, under the discovery rule, that she did not know of the injury

18   (Defendant's alleged violation of the FDCPA) in September of 2012.").

19        Finally, AllianceOne's attacks on the "ethical and moral characteristics" of Plaintiffs'

20   counsel are not supported by the facts.  First, AllianceOne accuses Plaintiffs' counsel of

21   suborning perjury because they asked follow-up questions during a deposition, and also of

22   barratry because they are jointly representing the Plaintiffs in this action.  *See* Dkt. No. 124 at

23   15:18 – 18:11.  Cross-examination by Plaintiffs' counsel during a deposition does not constitute

24   suborning perjury, particularly when the testimony elicited is consistent with and further

25   clarifies misleading questions that were asked during the deposition, as explained above.

26   AllianceOne's challenges to Plaintiffs' counsel's overall adequacy and to alleged barratry are

27

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 9
CASE NO. 3:14-CV-05835-RJB

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   also without factual support.  There is ample evidence in the record of Plaintiffs' counsel's

2   knowledge of the underlying facts, and collective and extensive experience litigating and trying

3   class actions and litigating cases involving the same areas of law at issue here – the FDCPA

4   and CPA.  *See* Dkt. Nos. 101 at ¶ 5, 102 at ¶¶ 2, 5 – 8, 103 at ¶¶ 2 – 5, 9, 104 at ¶¶ 2.  Such

5   evidence includes a declaration from David Leen of Leen & O'Sullivan PLLC, which

6   AllianceOne has ignored.  Dkt. No. 102 at ¶¶ 2, 5 – 8.  Adequacy is satisfied.

7   **E.      Predominance Is Satisfied**

8          "Considering whether questions of law or fact common to class members predominate

9   begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund,*

10  *Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).  The parties agree on the elements of

11  Plaintiffs' FDCPA cause of action, but AllianceOne misapprehends Plaintiffs' claims based on

12  violations of the CPA, including per se violations based on the CAA.  AllianceOne's sole

13  argument against predominance challenges only Plaintiffs' FDCPA Sub-Class.  In particular,

14  AllianceOne again argues individual fact finding will "be required for each alleged class

15  member in order to determine whether the dishonored check was extended as part of a

16  consensual, voluntary transaction primarily for person, family, or household purposes."  Dkt.

17  No. 124 at 17:14 – 20:10.  As set forth in Section II.B.2, *supra*, AllianceOne is wrong.

18         The FDCPA is a remedial statute that should be construed liberally in favor of the

19  consumer.  *Tourgeman*, 755 F.3d at 1118.

20                      Given the broad and express purposes of the Act--to protect
                        consumers and to eliminate abusive collection practices so
21                      completely as to eliminate any business advantage such practices
                        may bestow--courts should favor use of the Act as a means to
22                      protect more, rather than fewer, affected consumers.  Where
                        appropriate, a class action seems therefore more suited than
23                      individual actions to effectuate the purposes of the Act.
24
25  *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 686 (D. Nev. 2008).  Thus, Courts have

26  rejected the same argument AllianceOne makes here because, among other things, it would

27  frustrate the express statutory authority permitting FDCPA class actions.  *See, e.g., Wilborn v.*

*Dun & Bradstreet Corp.*, 180 F.R.D. 347, 357 (N.D. Ill. 1998) ("The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions [sic].  If that need alone precluded certification, there would be no class actions under the FDCPA.")

In light of the broad remedial purpose of the FDCPA, it is not surprising that courts have found that the need to determine the consumer nature of a debt does not automatically preclude class certification.  *See Ballard v. Equifax Check Servs.*, 186 F.R.D. 589, 598-99 (E.D. Cal. 1999).  "Instead, courts should examine the general nature of the debts and the ease of separating consumer from business debts…."  *Id.*; *see also Karnette v. Wolpoff & Abramson, LLP*, Case No. 3:06-CV-44, 2007 WL 922288, at *12 (E.D. Va. Mar. 23, 2007) (noting "courts have been considerably inhospitable" to the objection that it will be difficult to parse out personal from business debts, and finding FDCPA class action manageable).

Here, determination regarding FDCPA coverage is not an obstacle to certification.  To begin with, the FDCPA Sub-Class is limited to those who wrote checks to the DOL.  As set forth above, AllianceOne only collects on dishonored checks written to the DOL for vehicle and license registrations, and accounts receivables.  *See* Baker Decl. ¶ 2.  This Court has already ruled that since registering a vehicle is a consensual transaction, it is a debt within the meaning of the FDCPA.  Dkt. No. 12 at 5:21-6:5.  The same analysis applies to obtaining a driver's license.  *See* Dkt. No. 126 at Section III.B.1.  With respect to AllianceOne's collections of dishonored checks written for accounts receivables, information about those debts can be obtained from the DOL or through a simple question to each sub-class member.  *See, e.g., Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271, 277 (W.D. Mich. 2001) (rejecting the defendant's argument that determination of the status of each debt will predominate, noting "there are a number of relatively straightforward ways of handling this issue without it overshadowing the common issues of fact and law," including from defendant's own customers or through a simple question to each class member).

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 11
CASE NO. 3:14-CV-05835-RJB

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Certifying the FDCPA Sub-Class effectuates the remedial purpose of the FDPCA.

2    There is a single common question that predominates—the lawfulness of AllianceOne's form

3    NOD letters.  Indeed, the answer to this question will drive the resolution of this case with

4    respect to all of the proposed classes.  Certification is proper under Rule 23(b)(3).

5    **F.      The Merits of Plaintiffs' Claims Can Be Decided On a Class-Wide Basis**

6    AllianceOne begins and ends its argument against class certification by arguing the

7    merits of Plaintiffs' claims.  *See* Dkt. No. 124 at 6:4 – 7:20, 21:1 – 22:6.  AllianceOne's

8    arguments, however, serve only to highlight that this case is particularly well suited for class

9    treatment.  For example, AllianceOne argues that RCW 62A.3-540 only requires "substantial

10   compliance," that the language of that statute does not violate Washington law, and that

11   Plaintiffs are incorrect regarding the damages available to the class.  Dkt. No. 124 at 6:5 – 7:20.

12   Whether AllianceOne was required to conform its NOD to the statutory form notice of dishonor

13   and whether language threatening criminal prosecution violates Washington law are both

14   common questions that can be answered once for the entire class.  Likewise, the question

15   regarding what damages are available to the class is a common question.

16   Finally, despite AllianceOne's assertions to the contrary, Plaintiffs clearly "identify the

17   pertinent statute" and violations at issue for the CPA Sub-Class.  *See* Dkt. No. 100 at 8:4 – 9:2,

18   9:12-19, 11:3 – 12:26 (identifying *per se* violations under the CAA, as well as, unfair and

19   deceptive acts and practices, including "[f]alsely threatening 'criminal charges' to collect

20   unlawful fees" and collecting unlawful fees).  Whether the claims of the CPA Sub-Class will

21   ultimately fail or succeed is a merits determination.  Either way, the answers will bind all

22   members of the CPA Sub-Class.

23   **III.  CONCLUSION**

24   For all of the foregoing reasons, Plaintiffs respectfully request that the Court certify the

25   proposed Classes with Plaintiffs as class representatives, appoint the undersigned counsel for

26   the Classes, and direct that notice be sent to the Classes.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   RESPECTFULLY SUBMITTED AND DATED this 20th day of November, 2015.

2                                TERRELL MARSHALL LAW GROUP PLLC

3

4                                By:   /s/ Erika L. Nusser, WSBA #40854
                                     Beth E. Terrell, WSBA #26759
5                                    Email:  bterrell@terrellmarshall.com
                                     Erika L. Nusser, WSBA #40854
6                                    Email:  enusser@terrellmarshall.com
                                     936 North 34th Street, Suite 300
7                                    Seattle, Washington  98103-8869
                                     Telephone:  (206) 816-6603
8                                    Facsimile:  (206) 319-5450

9
                                     Kathleen Box, WSBA #45254
10                                   Email:  katy@leenandosullivan.com
                                     NORTHWEST CONSUMER LAW CENTER
11                                   520 East Denny Way
                                     Seattle, Washington  98122
12                                   Telephone:  (206) 325-6022

13
                                     Sam Leonard, WSBA #46498
14                                   Email:  consumerlawyer@outlook.com
                                     ANTOINETTE M. DAVIS LAW, PLLC
15                                   528 Third Avenue West, Suite 102
                                     Seattle Washington 98119
16                                   Telephone:  (206) 486-1011
                                     Facsimile:   (206) 905-5910
17

18                                   Paul Arons, WSBA #47599
                                     Email:  lopa@rockisland.com
19                                   LAW OFFICE OF PAUL ARONS
                                     685 Spring Street
20                                   Friday Harbor, Washington  98250
                                     Telephone:  (360) 378-6496
21                                   Facsimile:  (360) 378-6498
22

23                                   *Attorneys for Plaintiffs*

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>CERTIFICATE OF SERVICE</u>

I, Erika L. Nusser, hereby certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Jeffrey E. Bilanko, WSBA #38829
> Email:  jbilanko@gordonrees.com
> Elizabeth K. Morrison, WSBA #43042
> Email:  emorrison@gordonrees.com
> Email: shosey@gordonrees.com
> GORDON & REES LLP
> 701 Fifth Avenue, Suite 2100
> Seattle, Washington  98104
> Telephone:  (206) 695-5100
> Facsimile: (206) 689-2822

> *Attorneys for Defendant*

DATED this 20th day of November, 2015.

> TERRELL MARSHALL LAW GROUP PLLC

> By:  __/s/ Erika L. Nusser, WSBA #40854__
>      Erika L. Nusser, WSBA #40854
>      Email: enusser@terrellmarshall.com
>      936 North 34th Street, Suite 300
>      Seattle, Washington  98103
>      Telephone:  (206) 816-6603
>      Facsimile:  (206) 319-5450

> *Attorneys for Plaintiffs*

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION - 14
CASE NO. 3:14-CV-05835-RJB