1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11  MARGARET L. DIBB, SHAUNA           CASE NO. 14-5835 RJB
    OVIST, SAMANTHA MASON, and
12  WENDY GONDOS, individually and on   ORDER ON DEFENDANTS
    behalf of others similarly situated,   MOTION TO DENY CLASS
                                        CERTIFICATION AND PLAINTIFFS'
13              Plaintiffs,              MOTION FOR CLASS
                                        CERTIFICATION
14       v.

15  ALLIANCEONE RECEIVABLES
    MANAGEMENT, INC.,
16
                Defendant.
17

18        This matter comes before the Court on Defendant AllianceOne Receivables Management,

19  Inc.'s ('AllianceOne') Motion to Strike (Dkt. 124), AllianceOne's Motion to Deny Class

20  Certification (Dkt. 93) and Plaintiffs' Motion for Class Certification (Dkt. 100).  The Court has

21  considered the pleadings filed in support of and in opposition to the motions, oral argument on

22  December 15, 2015, and the file herein.

23        Plaintiffs Margaret Dibb, Shanua Ovist, Samantha Mason (who has now voluntarily

24  dismissed her suit), and Wendy Gondos filed this putative class action seeking relief under the

1  Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("FDCPA"), the Washington State

2  Consumer Protection Act, RCW 19.86, *et seq.* ("CPA"), and the Washington Collection Agency

3  Act, RCW 19.16.100, *et seq.* ("CAA") in connection with Defendant's attempts to collect debts

4  arising from returned checks.  Dkt. 58.

5                                          **I.      FACTS**

6          Defendant AllianceOne engages in debt collection in the United States.  This case arises

7  from its collection activities in the State of Washington, and centers on the initial forms sent to

8  consumers–the Notice of Dishonor ("NOD") and Notice of Placement ("NTC") forms. Plaintiffs

9  maintain that AllianceOne "used the same defective NOD form and attempted to collect the same

10 fees and penalties that it sought from Plaintiffs in all of its check collection practices in

11 Washington from at least October 20, 2010, the beginning of the class period, until at least

12 October 24, 2014, four days after this lawsuit was filed." Dkt. 100.  Plaintiffs contend that while

13 the NTC form itself was not defective, language in the NOD overshadowed or contradicted

14 notices in the NTC.  *Id.*

15         The NOD at issue provided:

16         A check drawn by you and made payable by you to . . . in the amount of . . . has
           not been accepted for payment by . . ., which is the drawee bank designated on
17         your check. The check is dated  . . . and numbered . . . .

18         You are CAUTIONED that unless you pay the amount of this check (plus a
           reasonable handling fee of $ . . . per check as provided in RCW 62A.3-515)
19         within thirty days after the date this letter is postmarked, you may very well have
           to pay the following additional amounts:
20
21         (1) Costs of collecting the amount of the check in the lesser of the check amount
               or forty dollars, plus, in the event of legal action, court costs and attorney's
22             fees which will be set by the court;

23         (2) Interest on the amount of the check which shall accrue at the rate of twelve
               percent per annum from the date of dishonor; and,
24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 2

(3) Three hundred dollars or three times the face amount of the check, whichever is less, by award of the court.

You are also CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check within thirty days after the date this letter is postmarked. . .

This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.

*E.g.* Dkt. 110, at 7.

Defendant AllianceOne's computer system, Columbia Ultimate Collection System ('CUBS'), identifies the client for whom Defendant is collecting. Dkt. 127, at 27. When collecting for Washington Department of Licensing ('DOL'), CUBS also designates what the debtor's check was written for - for example, a driver's license or license plates or tabs. *Id*, at 27 and 36. CUBS records whether AllianceOne requested that its vendor send the initial communication forms (the NOD and NTC) (Dkt. 127, at 31-33) and the dates those letters were sent (Dkt. 127, at 35). Unless one of AllianceOne's clients sent its own notice of dishonor form, which is also designated in the computer system, AllianceOne sent the NOD and NTC at issue here to all debtors in the State of Washington from whom they were attempting to collect on a returned check. Dkt. 127, at 34. AllianceOne sent the same NOD form from October 2010 to October 2014. Dkt. 104-5, at 11-12. It sent the same NTC form from October 2010 to July of 2014. *Id.*

1. Plaintiff Margaret Dibb

As to Plaintiff Dibb, the background facts are found in the April 2, 2015 Order on Defendant's Motion for Summary Judgment and on Plaintiffs' Motion for Approval to Amend Complaint (Dkt. 36, at 2-4) and are as follows:

1       Plaintiff Dibb moved from Oregon to Vashon Island, Washington in 2012.
Dkt. 25, at 2.  She purchased license plates and tabs for her vehicle from the

2   Washington State Department of Licensing ('DOL') using a personal check in the
amount of $90.25.  *Id.*, at 2.

3       Around July 10, 2013, Ms. Dibb returned to DOL to renew her tabs, and was
informed that her check from the previous year had been returned for insufficient

4   funds.  *Id.*  She was further informed that the debt had been sent to a collection
agency, the Defendant here, and that she would need to contact the Defendant and

5   pay the amount of the check plus interest before she could renew her tabs.  *Id.*
Ms. Dibb states that she was unaware that her check had been returned or that her

6   account had been sent to Defendant.  *Id.*

    Ms. Dibb contacted Defendant, and was told that she owed $98.77 (which

7   included the dishonored check and interest) and additional fees because the matter
had been sent to their attorneys.  *Id.*  She asserts that Defendant refused to give

8   her contact information for those attorneys.  *Id.*, at 3.  Ms. Dibb states that she
called Defendant multiple times that day, trying to speak with their attorneys, all

9   along disputing that she owed anything over the $98.77.  *Id.* at 3-4. She states that
during one of those calls, she told them that she would pay the $98.77, 'stressing

10  [her] contention that this was [her] debt in full.' *Id.*, at 4.  She paid the $98.77, and
states that she told Defendant to send her an email receipt, and Defendant did so.

11  *Id.*  Ms. Dibb returned to DOL and renewed her car tabs.  *Id.*

    On October 24, 2014, Ms. Dibb was served with a complaint filed against her

12  by Defendant on May 29, 2013 in King County District Court in Issaquah
Washington, case number 133-15386.  *Id.*  She states she 'was shocked' to receive

13  the complaint because she 'was under the assumption during all this time that [her]
message had been conveyed to the legal counsel and that they realized that there

14  was nothing to collect.' *Id.*  Ms. Dibbs contends that after she paid Defendant the
$98.77 in July 2013, she was not contacted either by mail or email until service of

15  the King County District Court complaint.  *Id.*

    According to the Complaint in this case, Defendant filed a motion for

16  summary judgment in the King County District Court case and maintained that it
was owed $710.93.  Dkt. 1, at 3-4.  In that motion, Defendant asserted that it sent

17  Ms. Dibb a [NOD], dated September 25, 2012.  Dkt. 1, at 4.  Ms. Dibb asserts that
she did not receive the NOD until the Defendant filed its motion for summary

18  judgment in state court.  Dkt. 25, at 4.

19  Dkt. 36, at 2-4.  Ms. Dibb and Defendant settled the King County District Court matter before a

20  decision on the summary judgment motion was issued.  Dkts. 104-19, at 2-4.  The undersigned's

21  April 2, 2015 Order denied Defendant's Motion for Summary Judgment, holding that there were

22  issues of fact as to whether Plaintiff Dibb's FDCPA claim was barred by the statute of limitations

23  due to irregularities in her mail.  *Id.*

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 4

1        2.   Plaintiff Shauna Ovist

2        Plaintiff Ovist wrote a check for $55.00 to DOL to renew her driver's license.  Dkts. 94-1

3    and 110, at 5.  Her check was dishonored on presentment.  *Id.*  AllianceOne sent her the NOD

4    form, dated July of 2014.  Dkts. 94-1, at 9; 110 at 5.  Plaintiff Ovist paid AllianceOne $139.74 in

5    April or May of 2015 (Dkts. 94-1, at 8 and 104-21, at 2) after she joined this lawsuit.

6        3.   Plaintiff Wendy Gondos

7        Plaintiff Gondos wrote a check for $107.95 to DOL in May of 2014 to renew her vehicle

8    tabs.  Dkts. 96-4, at 3; 110, at 9.  Her check was dishonored on presentment.  *Id.*  AllianceOne

9    sent her the NOD form, dated September of 2014.  Dkt. 110, at 9.  Plaintiff Gondos paid

10   AllianceOne $188.20.  Dkt. 104-23.

11       4.   Plaintiff Samantha Mason

12       At oral argument, counsel indicated that Plaintiff Mason is voluntarily dismissing her

13   suit.  She should be dismissed as a Plaintiff and her name removed from the case caption in all

14   future pleadings.

15                    **II.    DISCUSSION**

16   Due to the fact that both parties filed motions regarding certification, the briefing on this

17   issue was exceptionally repetitive.  In any event, this opinion will first address Defendant's

18   motion to strike (Dkt. 124) and then the cross motions regarding certification.

19   **A.  MOTION TO STRIKE**

20   Defendant's motion to strike the portion of Mr. Leonard's declaration regarding Plaintiffs'

21   willingness to prosecute this action on behalf of the class (Dkt. 124) should be denied.  Although

22   Defendant argues that it is hearsay, as one of their attorneys, Mr. Leonard has personal

23

24

1    knowledge of their commitment to prosecute the case. For purposes of the motions on

2    certification only, the motion should be denied.

3    B.  **MOTIONS REGARDING CERTIFICATION - THREE PROPOSED CLASSES**

4    Plaintiffs move for certification of three classes:

5    <u>Umbrella Class</u>: All persons who wrote checks within the State of Washington to
     whom AllianceOne sent, at any time since October 20, 2010, a Notice of
6    Dishonor of Check in connection with an allegedly unpaid check, in a form
     substantially similar to the one allegedly sent to Plaintiffs.

7
     <u>Fair Debt Collection Practices Act Sub-Class</u>: All persons in the umbrella class
8    whose check was written to the Washington Department of Licensing to pay a fee
     incurred primarily for personal, family or household purposes, to whom
9    AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2013.

10   <u>Consumer Protection Act Sub-Class</u>: All persons in the umbrella class, to whom
     AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2010,
11   and who paid any fees to Defendant.

12   Dkt. 100, at 8. At oral argument, Plaintiffs' counsel explained that a party must be a member of at

13   least one of the subclasses in order to recover damages.

14   **C.  STANDARD FOR CERTIFYING A CLASS**

15   'Federal Rule of Civil Procedure 23 allows a representative to litigate on behalf of a class of

16   similarly-situated individuals who are too numerous to join the litigation. The party seeking class

17   certification bears the burden of establishing that the proposed class meets the requirements of

18   Rule 23." *Edwards v. First Am. Corp*., No. 13-55542, 2015 WL 4999329, at *2 (9th Cir. Aug. 24,

19   2015)(*citing Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  Accordingly,

20   Plaintiffs must meet the four requirements of Rule 23(a) and at least one of the requirements of

21   23(b).  *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1189 (9th Cir.) *opinion amended on*

22   *denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)(*internal quotation omitted*).

23   **D.  RULE 23(a) REQUIRMENTS**

24

Fed. R. Civ. P. 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23.

### 1. Numerosity

The requirement of numerosity is met if "the class is so large that joinder of all members is impracticable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 F. App. 646, 650-51 (9th Cir. 2010).

Plaintiffs have submitted sufficient evidence to support their claim that the class is well over forty; so numerous that joinder of all the members is impractical. Dkt. 104, at 3. Defendant does not meaningfully dispute that the numerosity requirement is met. Plaintiffs have satisfied this prerequisite.

### 2. Commonality

The commonality prerequisite requires that there be "questions of law or fact common to the class." Rule 23(a)(3). Commonality mandates that Plaintiffs' claims depend "upon a common contention" which is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification is not the raising of common 'questions' . . . but, rather the capacity of

1  a classwide proceeding to generate common answers apt to drive the resolution of the litigation.

2  Dissimilarities within the proposed class are what have the potential to impede the generation of

3  common answers." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "This does not,

4  however, mean that *every* question of law or fact must be common to the class; all that Rule

5  23(a)(2) requires is a single *significant* question of law or fact." *Abdullah v. U.S. Sec. Associates,*

6  *Inc.,* 731 F.3d 952, 957 (9th Cir. 2013) *cert. denied*, 135 S. Ct. 53, 190 L. Ed. 2d 30

7  (2014)(*emphasis in original*).

8          Plaintiffs have met the commonality requirement.  Plaintiffs argue that AllianceOne's

9  NOD form, which AllianceOne acknowledges that it sent to debtors in Washington, violates

10  Washington law and the FDCPA.  Dkt. 100.

11          In regard to the umbrella class, Plaintiffs point out that under Washington law, a

12  collection company can only collect fees if it provides a notice of dishonor letter in accord with

13  that form provided at RCW 62.A.3-540.  *Id.*  Under RCW 62A.3-530,

14          If the collection agency or its agent provides a notice of dishonor in the form
          provided in RCW 62A.3-540 to the drawer and the check amount plus the

15          reasonable handling fee are not paid within thirty-three days after providing the
          notice of dishonor, then, unless the instrument otherwise provides, the drawer of

16          the instrument is liable for payment of interest at the rate of twelve percent per
          annum from the date of dishonor, and a cost of collection of forty dollars or the

17          face amount of the check, whichever is less, payable to the collection agency. In
          addition, in the event of court action on the check and after notice and the

18          expiration of the thirty-three days, the court shall award reasonable attorneys'
          fees, and three times the face amount of the check or three hundred dollars,

19          whichever is less, as part of the damages payable to the collection agency.

20  RCW § 62A.3-530 (West).

21          Plaintiffs have shown that a common issue in this case for all Plaintiffs will be whether

22  AllianceOne's NOD form complies with RCW 62.A.3-540.  *Id.*  Plaintiffs contend that it does

23  not.  *Id.*  They note that AllianceOne changed the statutory language for a notice of dishonor

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 8

form found in RCW 62.A.3-540 in its NOD form, including reducing the number of days that payment had to be made to avoid incurring additional fees from thirty-three days to thirty days. *Id.,* at 14. They point out that AllianceOne omitted from its NOD certain other statutory language, including language that provided: "[n]ote that this caution regarding increased amounts in any possible legal action is advisory only and should not be construed as a representation or implication that legal action is contemplated or intended." *Id.* Plaintiffs also note that AllianceOne's form included a "law enforcement" provision which provided:

> You are CAUTIONED that law enforcement agencies may be provided with a copy of this notice of dishonor and the check drawn by you for the possibility of proceeding with criminal charges if you do not pay the amount of this check within thirty days after the date this letter is postmarked.

*Id.* Plaintiffs argue that this portion of the NOD is legally deficient under Washington law - it does not comply with RCW 62.A.3-540 because it reduces the timeframe from thirty-three days to thirty days. *Id.* Plaintiffs argue that AllianceOne's failure to comply with the statutory form resulted in it collecting fees for which it was not entitled.

Plaintiffs note that the CAA prohibits a collection agency from threatening criminal prosecution. *Id.* (*citing* RCW 19.16.250(13)). Plaintiffs argue that AllianceOne's inclusion of this "law enforcement" provision in the NOD violates CAA. *Id.* Plaintiffs point out that RCW 19.16.450 prohibits a collection agency that has violated RCW 19.16.250 from collecting any collection costs or fees. *Id.* The CAA also provides, in pertinent part, that no collection agency shall:

> Communicate with the debtor and represent or imply that the existing obligation of the debtor may be or has been increased by the addition of attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation of such debtor.

1  RCW 19.16.250(15).  Plaintiffs assert that AllainceOne's NOD violates the CAA, and its

2  collection of fees was prohibited under the Act. Dkt. 100.  Answers to all of these questions will

3  drive resolution of this litigation.

4        Regarding the proposed CPA subclass, Plaintiffs have shown that there are common legal

5  issues among the class members.  Dkt. 100.  To state a claim under the CPA, a plaintiff must

6  allege: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that

7  impacts the public interest; (4) causes injury to the Plaintiffs' business or property; and (5)

8  causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co,* 105 Wn.2d 778, 780 (1986).

9  Violations of the CAA are considered unfair acts or practices occurring in trade or commerce for

10  purposes of Washington's CPA.  RCW 19.16.440 (providing that acts or practices prohibited by

11  the CAA, are "declared to be unfair acts or practices or unfair methods of competition in the

12  conduct of trade or commerce for the purpose of the application of the Consumer Protection Act

13  found in chapter 19.86 RCW").  Plaintiffs argue that even if a violation of the CAA did not, by

14  statute, meet the first two elements of the CPA test, the NOD sent here were unfair and deceptive

15  acts and occurred in trade or commerce.  Dkt. 100 (*citing Panag v. Farmers Ins. Co. of*

16  *Washington,* 166 Wn.2d 27, 49 (2009)(finding the CPA a "particularly appropriate vehicle" for

17  debt collection activities "that inventively evades regulation")).  They assert that Defendant's

18  conduct impacted the public interest.  *Id.*  Plaintiffs further argue that each of the named

19  Plaintiffs paid AllianceOne's fees, so they each were damaged, like other members of the CPA

20  subclass.  *Id.*  P

21        As to the FDCPA subclass, Plaintiffs assert that there are shared legal issues which are

22  also determinative of the litigation for the entire subclass.  In 2011, a court in this district ruled

23  that the "law enforcement" provision found in AllianceOne's NOD violated the FDCPA, and to the

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 10

1   extent that RCW 62.A.3-540 allows otherwise, it is preempted. *Lensch v. Armada Corp*., 795 F.

2   Supp. 2d 1180 (W.D. Wash. 2011). Plaintiffs assert that by retaining the 'law enforcement'

3   provision' after this ruling, AllianceOne violated the FDCPA. Dkt. 100. They argue that

4   AllianceOne further violated the FDCPA by failing to include an effective 'validation notice.' *Id.*

5   They explain that the FDCPA requires a 'validation notice' which informs debtors that they have

6   thirty days to dispute the debt. *Id.;* 15 U.S.C. §1692g (a). Plaintiffs argue that while

7   AllianceOne's NTC form, which was sent with the NOD, included the FDCPA's 'validation notice'

8   (informing debtors they had thirty days to dispute the debt), the language in AllianceOne's NOD

9   threatens criminal prosecution if payment is not made within thirty days. *Id.* Plaintiffs point out

10  that '[t]o be effective, the [FDCPA's validation] notice must not be overshadowed or contradicted

11  by other messages or notices appearing in the initial communication." *Id. (citing Swanson v.*

12  *Southern Or. Credit Serv.,* 869 F.2d 1222, 1225 (9th Cir. 1988)). Plaintiffs argue that

13  threatening criminal prosecution if the debt is not paid in thirty days ('law enforcement' provision

14  in the NOD) overshadows or contradicts the NTC's notice that debtors have thirty days to dispute

15  the debt. *Id.* Accordingly, they maintain whether this violated the FDCPA is also a common

16  issue among the subclass members.

17      Plaintiffs asserts that AllianceOne's NOD violated state and federal law and resulted in

18  AllianceOne collecting fees they were not entitled to collect. These are common contentions 'of

19  such a nature that [they are] capable of classwide resolution—which means that determination of

20  [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims

21  in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

22      AllianceOne argues that Plaintiffs have failed to show that each class member has

23  sustained the same injury. Dkts. 93, 124, 128. To the contrary, Plaintiffs maintain that because

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 11

1  AllianceOne's NOD did not conform to statutory requirements, state and federal law were

2  violated.  Further, they argue because of those violations, state and federal law prohibit it from

3  attempting collecting fees.  Plaintiffs argue that the class members have suffered the same

4  injuries–they have been charged fees that Defendant was not entitled to attempt to collect.  In the

5  case of the CPA subclass, they argue that members of that group were injured because they paid

6  the fees.

7       AllianceOne argues that because Plaintiffs are seeking "actual" damages for each class

8  member, an inquiry will have to be made as to each class member.   Dkts. 93, 124, and 128.

9  Plaintiffs' request for actual damages does not override the finding that they have stated sufficient

10  common issues for certification of the class.  At most, the damages inquiry "will consist of a

11  limited, straightforward factual determination that would not preclude finding commonality."

12  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029-30 (9th Cir. 2012).

13       AllianceOne also asserts that Plaintiffs request for actual damages creates a conflict of

14  interest between the named Plaintiffs and the other potential class members.  Dkts. 93, 124, and

15  128.  It theorizes that because there is a cap on FDCPA damages, recovery of actual damages

16  will diminish the amount of FDCPA damages available.  *Id.*

17       Violators of the FDCPA are liable for the following categories of damages:

18       (1) any actual damage. . . ;

19       (2)(A) in the case of any action by an individual, such additional damages as the
        court may allow, but not exceeding $1,000; or

20       (B) in the case of a class action, (i) such amount for each named plaintiff as could
        be recovered under subparagraph (A), **and** (ii) such amount as the court may

21       allow for all other class members, without regard to a minimum individual
        recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of

22       the debt collector; and

23       (3) in the case of any successful action to enforce the foregoing liability, the costs
        of the action, together with a reasonable attorney's fee as determined by the court.

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 12

15 U.S.C. § 1692k(a)(*emphasis added*).  Despite AllianceOne's contentions, there is no statutory set off between actual and statutory damages for the named Plaintiffs and class members.

AllianceOne argues that Plaintiffs Dibb and Ovist's claims are not common to the other potential Plaintiffs.  Dkts. 93, 124, and 128.  It argues that Plaintiff Dibb's FDCPA claim is barred by the statute of limitations.  *Id.*  It asserts that Plaintiff Ovist did not have any damages until after she joined the lawsuit and her lawyers instructed her to pay AllianceOne.  *Id.*  At best, these are divergent factual predicates and do not merit a finding that Plaintiffs have not shown commonality among the legal issues.  "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

A determination of whether AllianceOne's NOD form violates Washington law and the FDCPA will "generate common answers apt to drive the resolution of the litigation." *Dukes*, at 2551.  Plaintiffs have met the commonality requirement.

3.  Typicality

"The typicality requirement looks to whether the claims of the class representatives are typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)(*internal quotations omitted*).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012)(*internal citations omitted*).  "The typicality requirement is 'permissive' and requires only that the representative's claims are

1  reasonably co-extensive with those of absent class members; they need not be substantially

2  identical." *Rodriguez,* at 1124.

3        The named Plaintiffs have shown that their claims are "reasonably co-extensive with those

4  of absent class members" such that they have met the typicality requirement for the class and

5  subclasses.   Plaintiffs argue that their claims are typical of the class members because they all

6  share the same injuries - damages as a result of AllianceOne's violation of Washington's CAA and

7  CPA, and the FDCPA.  Dkt. 100.  The case is based on the same conduct:  AllianceOne sending

8  the same allegedly defective form letters to the named Plaintiffs.  *Id.*  This conduct that was not

9  unique to the named Plaintiffs.  The other potential class members have been injured by the same

10  course of conduct.  *Id.*

11        AllianceOne argues that the claims of two of the named Plaintiffs–Plaintiff Dibb and

12  Ovist are not typical.  Dkts. 93, 124, and 128. It argues that because the class representatives

13  must be members of the umbrella class and the two subclasses, and Plaintiff Dibb is not a

14  member of the FDCPA subclass (and possibly the CPA subclass), and Ovist is not a member of

15  the CPA subclass, the motion for certification must be denied.  Dkt. 93.  Defendant cites the

16  following cases for the proposition that each of the representative plaintiffs must be members of

17  the umbrella class and all the subclasses in the litigation:  *Betts v. Reliable Collection Agency,*

18  *Ltd.,* 659 F.2d 1000, 1005(9th Cir. 1981); *Berger v. Home Depot U.S.A., Inc*., 741 F.3d 1061(9th

19  Cir. 2014); *Abercrombie v. Lum's Inc.,* 345 F.Supp. 387, 393-94 (S.D. Fla. 1972); *Wolfson v.*

20  *Solomon,* 54 F.R.D. 584 (S.D.N.Y. 1972); *Norman v. Connecticut Board of Parole,* 458 F.2d 497

21  (2nd Cir. 1972); *Haas v. Pittsburg Nat'l Bank,* 526 F.2d 1083 (3rd Cir. 1975); *Leonard v. Merrill*

22  *Lynch, Pierce, Fenner & Smith, Inc.*, 64 F.R.D. 432, 434 (S.D.N.Y. 1974); *United States v.*

23  *Truckee-Carson Irrigation Dist*., 71 F.R.D. 10 (D.C. Nev. 1975).   These cases do not support

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 14

1  Defendant's contention.  While these cases hold that <u>a</u> representative plaintiff must be a member

2  of the class they purport to represent, they did not hold that <u>every</u> named plaintiff must be a

3  member of the umbrella class and <u>all</u> subclasses in the case.  *Betts*, *Berger*, and *Norman*,

4  involved only one representative plaintiff that each court found were not members of the

5  subclasses they purported to represent. *Lum's*  and *Leonard* involved more than one

6  representative plaintiff, but the court found that none of them were members of the

7  classes/subclasses, and so the typicality requirement was not met as to those classes/subclasses.

8  *Lum's*, at 393 and *Leonard,* at 434 (noting "it is incontrovertible that the named plaintiffs have no

9  independent substantive rights against" the defendants and so cannot represent a class).  In

10  *Wolfson* and *Truckee-Carson* the representative Plaintiffs were held to be members of the classes

11  they purported to represent.  One case, *Haas,* appears to cut against Defendant's argument. It had

12  two named Plaintiffs, and only one of them (Plaintiff Haas) purported to represent one of the

13  subclasses.  *Haas*, at 1089-1090.  The Third Circuit found that typicality as to that subclass was

14  met.  *Id*.  Further, Defendant does not argue that Plaintiff Gondos is not in the umbrella class and

15  both subclasses.

16      Moreover, assuming that Defendant's assertion (that all representative plaintiffs must be a

17  member of all classes and subclasses in the litigation for certification) has merit, which it does

18  not, the defenses it raises as to Plaintiff Dibb (the statute of limitations regarding her FDCPA

19  claim and that her CAA and CPA claims "may be barred by res judicata") and Plaintiff Ovist

20  (failure to mitigate her damages because she paid AllianceOne after she joined the litigation) are

21  not so unusual as to bar a finding of typicality.

22      "Defenses unique to a class representative counsel against class certification only where

23  they threaten to become the focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 15

1   Cir. 2010).  In *Hanon v. Dataproducts Corp.*, 976 F.2d 497(9th Cir.1992), the Ninth Circuit

2   found that the named plaintiff in a putative class action did not satisfy Rule 23(a)'s typicality

3   requirement because his "unique background and factual situation require[d] him to prepare to

4   meet defenses that [were] not typical of the defenses which may be raised against other members

5   of the proposed class." *Hanon* was a putative class action regarding securities fraud.  After noting

6   that *Hanon* was a sophisticated investor, who purchased a small amount of the stock at issue, and

7   who had engaged in extensive securities litigation with the same lawyers involved in that

8   lawsuit, the Ninth Circuit found that his claims were not typical of the class he purported to

9   represent.  They noted that attacks on whether Hanon reasonably relied on the market would

10   likely involve unique evidence and the focus of the litigation would be overly specific to his

11   situation.

12         *Hanon* does not apply here.  The defenses raised against the named Plaintiffs are typical.

13         As to Plaintiff Dibb, this Court has already held that there are issues of fact as to whether

14   the statute of limitations applies to her FDCPA claim.  Dkt. 36.  To the extent that Defendant

15   reasserts the same argument here, this time with deposition testimony, Plaintiff has still raised

16   sufficient issues of fact as to when she received Defendant's NOD and NTC.  Deciding this issue

17   will not be a major focus of the litigation.  Further, "[c]ourts have been nearly unanimous in

18   holding that possible differences in the application of a statute of limitations to individual class

19   members, including the named plaintiff, does not preclude certification of a class action so long

20   as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise

21   present." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004).

22         Defendant also asserts that Plaintiff Dibb's claim under the CAA and CPA "may be barred

23   by *res judicata*" as a basis for finding her claims not typical of the class/subclass.  Dkt. 93.   This

24

1   argument is without merit. *Res judicata,* or claim preclusion, bars any subsequent suit on claims

2   that were raised or could have been raised in a prior action. *Owens v. Kaiser Foundation Health*

3   *Plan, Inc*., 244 F.3d 708, 713 (9th Cir. 2001). In determining whether to give preclusive effect to

4   a state court judgment, under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts are

5   required to give state court judgments the preclusive effects they would be given by another

6   court of that state. *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009). *Res judicata* applies where

7   the later action involves:"(1) the same subject matter, (2) the same cause of action, (3) the same

8   persons or parties, and (4) the same quality of persons for or against whom the decision is made

9   as did a prior adjudication." *Williams v. Leone & Keeble, Inc*., 171 Wash. 2d 726, 730

10   (2011)(*internal citation omitted*). "*Res judicata* bars relitigation of a claim that has been

11   determined by a final judgment." *Id.*

12        Plaintiff Dibb's claims are not barred by *res judicata.* The prior action to which

13   Defendant refers was a collections case filed in King County District Court. The subject matter

14   was Defendant's collection of the alleged debt, not whether its collection practices violated state

15   or federal law. So, the causes of action were different. Further, the parties settled the case

16   before any decision on the merits was issued resulting in a dismissal. Plaintiff Dibb's claims are

17   not barred by *res judicata*.

18        Defendant also argues that Plaintiff Ovist is not typical of the classes she purports to

19   represent because she paid the Defendant after joining the litigation at her lawyers' direction and

20   therefore failed to mitigate her damages. This defense as to Plaintiff Ovist is not so unique as to

21   counsel against finding that she is typical of others in the class.

22        Plaintiffs seek statutory damages under the FDCPA and actual damages under the

23   FDCPA and Washington law. Statutory damages are not subject to the mitigation of damages

24

1   defense, *(Moothart v. Bell*, 21 F.3d 1499, 1506 (10th Cir. 1994)(mitigation defense not

2   applicable to statutory damages awarded as a penalty, rather than as compensation)), so

3   Defendant's argument does not apply to statutory damages.  In regard to actual damages,

4   Plaintiffs point out that the basic measure of actual damages will be the unlawful fees that each

5   Plaintiff and class member paid.  They maintain that they and several other class members paid

6   the fees Defendant demanded.  The duty to mitigate the actual damages asserted here "prevents

7   recovery for damages the injured party could have avoided through reasonable effort." *Cobb v.*

8   *Snohomish Cty.*, 86 Wash. App. 223, 230 (1997).  "The party whose wrongful conduct caused the

9   damages . . . has the burden of proving the failure to mitigate." *Id.*  There has been no showing

10  what Plaintiff Ovist (or any of the other Plaintiffs who have lately paid Defendant) could have

11  done to avoid being damaged.  This defense is not unique to Plaintiff Ovist; and it does not

12  counsel against finding her claims as typical.

13          AllianceOne argues that Plaintiffs' claims are not typical of the class because their

14  underlying debts and transactions are not the same.  Dkt. 93.  Plaintiffs Dibb and Gondos wrote

15  checks for car tabs.  Plaintiff Ovist wrote a check to renew her license.  "Typicality refers to the

16  nature of the claim or defense of the class representative, and not to the specific facts from which

17  it arose or the relief sought." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011).

18          Further, to the extent that Defendant argues that Plaintiff Ovist's payment to renew her

19  driver's license is more like a tax and so is not a debt under the FDCPA, and so not typical of the

20  other class members, the argument should be rejected.  Defendant made that same argument in

21  regard to Plaintiff Dibb's payment for her car tabs and this Court specifically held that:

22          RCW 46.16A.030 makes it "unlawful for a person to operate any vehicle on a
            **public highway** of this state without having in full force and effect a current and
23          proper vehicle registration and displaying license plates on the vehicle." RCW
            46.16A.030(2) (*emphasis added*).  Plaintiffs properly point out that they do not

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 18

have to register their vehicles–they only must do so if they intend to drive their vehicles on public roads. Dkt. 10. Accordingly, they enter a consensual transaction and so any resulting debt (here due to the returned check) is covered under the FDCPA. That is, in exchange for the use of public roads, Plaintiffs agree to register their vehicles with the state. The underlying debt, then, is voluntarily undertaken.

Although the parties do not point to any authority precisely on point, nor can this Court find any, the Plaintiffs' position appears to be more consistent with the overall remedial scheme of the statute.

Dkt. 12. Like RCW 46.16A.030, RCW 46.20.001 generally prohibits driving without a license "upon a highway within this State." Plaintiffs again maintain that the statute only requires a license to drive on public roads. Dkt. 126. In paying to get a license, they argue, Plaintiff Ovist was engaging in a voluntary transaction, unlike paying taxes. Accordingly, the underlying debt was voluntarily taken and so is covered by the FDCPA. *Id.*

Plaintiffs' interpretation is again more consistent with the overall remedial nature of the statute. Plaintiff Ovist's debt is covered by the FDCPA. The Court notes that other Washington courts, in other circumstances, have found that similar language does not cover the entire state, but only public roads. *State v. Day*, 96 Wash.2d 646 (1982) (holding that RCW 46.61.506 and 46.61.005(2) which prohibits driving while under the influence of intoxicants "upon highways and elsewhere throughout the state" only applied to public roadways so intoxicated driver in unlicensed car in a private field did not violate the statute). Defendants' discussion of the individual parties' intent is not relevant to whether the debt is more like a tax (and thus categorically not covered under the FDCPA) or a voluntary transaction (and so possibly covered by the FDCPA).

Defendants argue that Plaintiffs' claims are not typical of the class/subclass because the DOL collects hundreds of certification and licensing fees besides fees for vehicles tabs and drivers' licenses. Dkt. 93. According to DOL employee Danelle Baker, DOL sends AllianceOne

1   **only** unpaid fees from "Drivers, Vehicles, and Accounts Receivable" for collection. Dkt. 131. It

2   sends unpaid fees from Business Licensing to another collection agency. *Id.* Further, the

3   AllianceOne's witness testified that its computer system identifies the basis of the debt for which

4   the check was written–for example driver's license or car tab, etc. So, identification of the basis

5   for the DOL debt is possible. The named Plaintiffs need not have the same reason for underlying

6   debt as other class members. Variation in the underlying debt is not a basis to deny the motion

7   for class certification.

8       To the extent that AllianceOne argues that the named Plaintiffs' FDCPA claims are not

9   typical of other potential subclass members because AllianceOne also collects debts to entities

10  like the Washington State Ferries, Department of Revenue and Washington Liquor Control

11  Board, its motion to deny certification should be denied. The FDCPA subclass specifically only

12  addresses debts from the DOL. It also limits the debts covered to those for "personal, family, or

13  household purposes."

14      Plaintiffs' claims are "reasonably co-extensive with those of the absent class members."

15  *Rodriguez,* at 1124. The typicality requirement is met.

16          4.   Adequacy

17  This factor has two requirements: (1) that the proposed representative plaintiffs and their

18  counsel do not have any conflicts of interest with the proposed class; and (2) that the named

19  plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Hanlon v.*

20  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

21      The named Plaintiffs and their counsel have shown that they do not have a conflict of interest

22  with the proposed class. Defendant argues that the named Plaintiffs have a conflict with the

23  potential class members because "Plaintiffs' statutory and actual damage claims necessarily

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 20

1  diminish the amount of damages any other class members may recover." Dkt. 93.  This is not a

2  sufficient reason to not certify the class, as there is no offset in FDCPA damages.

3      Further, the named Plaintiffs are committed to prosecuting this action on behalf of the class.

4  Dkt. 104.  They have responded to discovery and participated in depositions.  Plaintiffs have

5  hired lawyers who have experience in class action litigation and have prosecuted class action

6  cases against debt collection entities.  Dkts. 101, 102, 103, and 104.  They have successfully

7  litigated on behalf of hundreds of consumers.  *Id.*  Plaintiffs' counsel are also committed to

8  prosecuting the claims of the class and have the resources to do so.  *Id.*

9      Defendant argues that based on Plaintiff Dibb's statements regarding the statute of limitations

10  defense (that she did not receive the NOD until the summary judgment was filed, etc.) Plaintiff

11  Dibb is inadequate to prosecute this case for the class because her credibility is called into

12  question.  *See E.g.* Dkt. 124.  It also argues that Plaintiff Ovist's credibility is called into question

13  regarding when/why she paid Defendant.  *Id.*  Defendant's attacks on these Plaintiffs' credibility,

14  whether accurate or not, in the circumstances, do not provide a sufficient basis to find that they

15  will not adequately represent the class.  Defendant's representation of the deposition testimony is

16  not entirely accurate.  Slight variations in their versions of events is an insufficient basis to find

17  that they are inadequate representatives.  Defendant's argument, that since Plaintiffs' attorneys

18  were "complicit in these misrepresentations" their "ethical and moral" characters are called into

19  question is without merit and unnecessary.

20      Defendant argues that it is uncalled for to have four different law firms representing

21  Plaintiffs.  Dkt. 93.  It expresses concerns about high fees.  *Id.*  While Defendant's concern is not

22  without merit, the Court notes that Plaintiffs, if they prevail, will only be entitled to "reasonable"

23

24

1  attorneys' fees.  *See E.g.* 15 U.S.C. § 1692k (a)(3) (FDCPA providing for an award of 'a

2  reasonable attorney fee'); RCW 19.86.090 (CPA).  Duplicative work is not reasonable.

3      The named Plaintiffs and their counsel have shown that they do not have a conflict of interest

4  with the proposed class and are committed to prosecuting this action on behalf of the class.  The

5  requirement of adequacy is met.

6          5.  Conclusion on Rule 23(a)

7      Plaintiffs have sufficiently shown that they meet all of Rule 23(a) requirements.

8  **E.  RULE 23(b) REQUIREMENTS**

9      In addition to satisfying Rule 23(a), Plaintiffs must satisfy one of the requirements of Rule

10  23(b).  *Zinser,* at 1189.  Plaintiffs argue that they satisfy Rule 23(b)(3).  Dkt. 100.

11      Rule 23(b)(3) provides a class may be certified if 23(a) is met and '[t]he court finds that the

12  questions of law or fact common to class members predominate over any questions affecting

13  only individual members, and that a class action is superior to other available methods for fairly

14  and efficiently adjudicating the controversy.'

15          1.  Predominance

16      'Implicit in the satisfaction of the predominance test is the notion that the adjudication of

17  common issues will help achieve judicial economy.' *Zinser,* at 1189.

18      Plaintiffs have shown that common questions of law and fact predominate over the

19  questions of individual members.  Plaintiffs maintain that the NODs AllianceOne sent to

20  Washington consumers do not conform to the form set out in the Washington statute.  As a

21  result, they maintain that AllianceOne is not entitled to collect anything over the face amount of

22  the check.  These are common questions that can be answered for the umbrella class as a whole.

23

24

1    As to their FDCPA subclass, Plaintiffs also assert that there is a common nucleus of

2    operative fact that predominates where, as here, "defendants have engaged in standardized

3    conduct toward members of the proposed class by mailing them allegedly illegal form letters or

4    documents." Dkt. 100, at 27 (*citing Keele v. Wexler*, 149 F.3d, 594-595 (7th Cir. 1998)).  For

5    example, Plaintiffs assert that the "law enforcement" provision in AllianceOne's NOD violates the

6    FDCPA, and that that determination will predominate among the subclass.

7    Defendant argues that the nature of each of the underlying debts will have to be

8    determined for each subclass member.  Dkt. 93, 124, and 128.  Defendant points out that only

9    consumer debts are covered under the FDCPA.  *Id.*  It notes that DOL deals in hundreds of

10   licenses, some of which are commercial in nature.  *Id.*  Defendant asserts that, as a result, the

11   "management problems this presents are insurmountable." *Id.*  Defendant argues that a

12   determination would involve hundreds of mini-trials, including exhibits and briefs.  *Id.* However,

13   Plaintiff's FDCPA subclass is limited to those parties that wrote checks to DOL.  Further,

14   Defendant does not receive all the DOL's collection activity.  It is limited.  Moreover, Defendant's

15   computer system designates the basis of the DOL debt.  Management will not be insurmountable.

16   Defendant argues that because of the statute of limitation on the FDCPA, the court will

17   have to conduct individual inquires back to October 2010 because this is the date of the proposed

18   class.  The FDCPA subclass, however, specifically limits claims to those after October of 2013.

19   Considering the CPA subclass, Plaintiffs assert that Defendant's form letters violate the

20   CAA, and so, violate the CPA.  This subclass contains issues including, whether the letters were

21   unfairly deceptive because they threaten criminal prosecution and seek to collect fees to which

22   AllianceOne is not entitled, which will predominate over the litigation.

23

24

1    Defendant argues that miniature trials will have to be held to prove causation and actual

2  damages for each class member in the CPA subclass.  Dkt. 93.  As to actual damages, Defendant

3  also argues that the Court would have to determine which of the collected fees are permitted by

4  statute.  *Id.*

5    It is not clear that miniature trials would have to be held for each class member.

6  Plaintiffs point out that if they establish that Defendant's NOD form violates the CAA, (which is

7  a per se violation of the CPA), then they will have also shown that AllianceOne proximately

8  caused injury to class members and those members would be entitled to a return of the fees that

9  they paid.  Dkt. 126.  Further, Plaintiffs point out that the amount of overcharges can be

10  calculated from Defendant's computer records, and the fact that these damages vary does not

11  preclude certification.  Dkt. 100 (*citing Rodriguez v. Carlson,* 166 F.R.D. 465, 479 (E.D. Wash.

12  1996)).  They note that many of Defendants' concerns can be resolved through simple

13  questionnaires to potential class members.  Dkt. 130.

14    Defendant further asserts that the CPA subclass is contrary to Washington law because

15  "RCW 62A.3-540 expressly states that the cautionary language shall not be construed as

16  threatening, false, deceitful, misleading, or as a violation of any law."  Dkt. 124.  Defendant

17  argues that it is entitled to collect fees under Washington law if its forms "substantially" comply

18  with the Washington form found in the statute.

19    This is a merits determination that dominates this case.  Whether Defendant's NOD form

20  complies with Washington law is a question that predominates over this litigation.  The central

21  focus will be the legality of Defendant's forms.  Plaintiffs have shown that "the questions of law or

22  fact common to class members predominate over any questions affecting only individual

23  members" here.  Rule 23(b)(3)'s predominance requirement is met.

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 24

1            2.  <u>Superiority</u>

2        'In determining superiority, courts must consider the four factors of Rule 23(b)(3).' *Zinser*,

3 at 1190.  Those factors are:

4          (A) the class members' interests in individually controlling the prosecution or
          defense of separate actions;
5          (B) the extent and nature of any litigation concerning the controversy already
          begun by or against class members;
6          (C) the desirability or undesirability of concentrating the litigation of the claims in
          the particular forum; and
7          (D) the likely difficulties in managing a class action.

8 Fed. R. Civ. P. 23(b)(3).

9        Consideration of each of these factors demonstrates that a class action is the superior

10 method to 'fairly and efficiently adjudicating the controversy.' Rule 23(b)(3).

11        As to (A), the class members interest in individually controlling the litigation, '[w]here

12 damages suffered by each putative class member are not large, this factor weighs in favor of

13 certifying a class action.' *Zinser*, at 1190.

14        This factor weighs in favor of certification here.  The actual damages of each individual

15 class member are in the few hundred dollar range.  Statutory damages may be a thousand dollars.

16 Individual class members do not have a great interest in controlling the prosecution of separate

17 actions.

18        As to (B), other litigation already begun by or against class members:

19          This factor is intended to serve the purpose of assuring judicial economy and
          reducing the possibility of multiple lawsuits.... If the court finds that several other
20          actions already are pending and that a clear threat of multiplicity and a risk of
          inconsistent adjudications actually exist, a class action may not be appropriate
21          since, unless the other suits can be enjoined, ... a Rule 23 proceeding only might
          create one more action.... Moreover, the existence of litigation indicates that some
22          of the interested parties have decided that individual actions are an acceptable
          way to proceed, and even may consider them preferable to a class action. Rather
23          than allowing the class action to go forward, the court may encourage the class

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 25

1  members who have instituted the Rule 23(b)(3) action to intervene in the other
   proceedings.

2

3  *Zinser*, at 1191.

   This factor favors certification.  There is no information in the record that other actions

4  are already pending.

5  As to (C), the desirability of litigating the claims in the Western District of Washington,

6  the factor favors certification, or is neutral.

7  In regard to factor (D), the difficulties in managing a class action, this factor also does not

8  weigh against certification.  While all class actions are by nature more complex than other

9  litigation, this case will not be overly difficult to manage.

10  **F. ASCERTAINABILITY**

11  In addition to meeting the requirements of Rule 23, a class must be ascertainable before it

12  can be certified.  *Vinole v. Countrywide Home* Loans, *Inc.,* 571 F.3d 935, 939-40 (9th Cir. 2009).

13  A class is adequately defined and ascertainable if it is administratively feasible for the court to

14  determine whether a particular individual is a member.  *Id.*

15  Membership of Plaintiffs' proposed three classes is reasonably ascertainable. For ease of

16  reference, the proposed classes are again:

17
18  Umbrella Class: All persons who wrote checks within the State of Washington to
    whom AllianceOne sent, at any time since October 20, 2010, a Notice of
19  Dishonor of Check in connection with an allegedly unpaid check, in a form
    substantially similar to the one allegedly sent to Plaintiffs.

20  Fair Debt Collection Practices Act Sub-Class: All persons in the umbrella class
    whose check was written to the Washington Department of Licensing to pay a fee
21  incurred primarily for personal, family or household purposes, to whom
    AllianceOne sent a Notice of Dishonor of check on or after October 20, 2013.

22
    Consumer Protection Act Sub-Class: All persons in the umbrella class, to whom
23  AllianceOne sent a Notice of Dishonor of check on or after October 20, 2010, and
    who paid any fees to Defendant.

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 26

Dkt. 100, at 8.

As to the umbrella class, Defendants argue that the language "in a form substantially similar to the one allegedly sent to Plaintiffs" is vague.  Dkt. 124.  They argue that language does not identify what language violates the FDCPA or what must be included in the letter in order to make the recipient a member of the class.

Defendant however, stated that, except when the client wished otherwise (which is noted in the computer system), it sent the same two forms at issue here to all Washington debtors in the class period.  The proposed language is not vague in the circumstances and reasonably identifies class members.

In regard to the FDCPA subclass, Defendant argues that in order to determine whether a debtor is a potential class member, the Court will have to make an individual inquiry into whether that debt is covered by the FDCPA.  This issue was discussed and above in the typicality section of Rule 23 (a)(3) and the analysis there applies.  This subclass is limited in scope. Defendant's computer records indicate which debtor is indebted to the DOL, the nature of the underlying debt, the name of the debtor, the original check amount and the date.  From those records, any debtors with a business name could be immediately removed from the list of potential class member. Concerns about commercial drivers' licenses, for example could be dealt with on review of those record - those licenses are several times more expensive than an ordinary driver's license, and could be determined based on the amount of the check (which is also part of Defendant's record).  These determinations are objective in nature and should not dictate a denial of certification of the classes.

Members of Plaintiffs' proposed classes are reasonably ascertainable.

1     **G. CONCLUSION**

2         The following classes should be certified:

3         <u>Umbrella Class</u>: All persons who wrote checks within the State of Washington to whom AllianceOne sent, at any time since October 20, 2010, a Notice of

4         Dishonor of Check in connection with an allegedly unpaid check, in a form substantially similar to the one allegedly sent to Plaintiffs.

5

6         <u>Fair Debt Collection Practices Act Sub-Class</u>: All persons in the umbrella class whose check was written to the Washington Department of Licensing to pay a fee incurred primarily for personal, family or household purposes, to whom

7         AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2013.

8         <u>Consumer Protection Act Sub-Class</u>: All persons in the umbrella class, to whom AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2010,

9         and who paid any fees to Defendant.

10         Plaintiffs Dibb, Ovist, and Gondos should be appointed as class representatives and the

11 counsel currently representing Plaintiffs should be appointed class counsel.  Parties should file a

12 proposed case schedule, including setting deadlines for class notification, on or before January 8,

13 2016.  Plaintiffs should file a proposed notice to potential class members which complies with

14 Fed. R. Civ. P. 23 (c)(2) on or before January 15, 2016.

15                           **III.**    <u>**ORDER**</u>

16         Therefore, it is hereby **ORDERED** that:

17             •   Defendant's Motion to Strike (Dkt. 124) is **DENIED**;

18             •   Defendant AllianceOne Receivables Management, Inc.'s Motion to Deny Class

19                Certification (Dkt. 93) is **DENIED;**

20             •   Plaintiffs' Motion for Class Certification (Dkt. 100) is **GRANTED:**

21                 o   The following classes **ARE CERTIFIED**:

22                 <u>Umbrella Class</u>: All persons who wrote checks within the State of Washington to whom AllianceOne sent, at any time since October 20,

23                 2010, a Notice of Dishonor of Check in connection with an allegedly

24

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 28

unpaid check, in a form substantially similar to the one allegedly sent to Plaintiffs.

Fair Debt Collection Practices Act Sub-Class: All persons in the umbrella class whose check was written to the Washington Department of Licensing to pay a fee incurred primarily for personal, family or household purposes, to whom AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2013.

Consumer Protection Act Sub-Class: All persons in the umbrella class, to whom AllianceOne sent a Notice of Dishonor of Check on or after October 20, 2010, and who paid any fees to Defendant.

- o   Plaintiffs Dibb, Ovist, and Gondos should be appointed as class representatives;

- o   Plaintiff Mason is dismissed as a Plaintiff and her name shall be removed from the case caption in all future pleadings;

- o   Counsel currently representing Plaintiffs should be appointed class counsel;

- Parties **SHALL FILE** a joint proposed case schedule, including setting deadlines for class notification, on or before January 8, 2016; and

- Plaintiffs **SHALL FILE** a proposed notice to potential class members which complies with Fed. R. Civ. P. 23 (c)(2) on or before January 15, 2016.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 16th day of December, 2015.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANT'S MOTION TO DENY
CLASS CERTIFICATION AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION- 29